FITTS vs. CREAM CITY RAILROAD COMPANY.

*December 15, 1883 — January 8, 1884.*

*Street railways — Negligence — Nonsuit — Expert testimony.*

1. A nonsuit should not be ordered if the evidence, construed as favorably for the plaintiff as possible, tends to prove the facts necessary to a recovery.
2. The questions of negligence and contributory negligence are peculiarly questions for the jury, where there is any evidence tending to show either.
3. Street railways must not only be constructed, but also *maintained*, upon the most approved plans and by the use of the common and approved means, with a view to the safety and convenience of the public traveling on the streets.
4. In an action for injuries caused by a turn-table used on a street railway a witness shown to be an expert may testify as to the kind of turn-tables in general use, as to whether the turn-table in question was one of the most approved turn-tables in use, and as to defects therein and how they could be remedied.
5. A carpenter and joiner who had been connected with a street railway for four years and had made turn-tables for it, was competent to testify as an expert as to whether a certain turn-table was safe or was the most approved turn-table in general use.

APPEAL from the County Court of *Milwaukee* County.

Action to recover for injuries to the plaintiff's cutter and harness caused by the defendant's negligence in having and using a defective and unsafe turn-table in a public street, and an improper iron latch or catch thereon, which caught the runner of the plaintiff's cutter as he was driving by.

The facts are stated in the opinion.    The plaintiff appealed from a judgment dismissing the complaint.

The cause was submitted for the appellant on the brief of *H. H. Field*, and for the respondent on that of *Winfield Smith*.

For the appellant it was argued, among other things, that the nonsuit was improper.    Where the motion is made after the defendant's testimony is in, the plaintiff is entitled to the benefit of it in support of the denial of the motion.    *Harper v. Milwaukee*, 30 Wis., 365; *Martin v. W. U. R. R. Co.*, 23 id., 437; *Dodge v. McDonnell*, 14 id., 553; *Painton v. N. C. R'y Co.*, 83 N. Y., 7.    Questions of the contributory negligence of the plaintiff, either in the rate of speed, the manner of driving, the kind of vehicle used, the character of the horse, deviation from the traveled track, avoidance of obstructions, knowledge of defects, looking and listening for signals, etc., are for the jury.    *Kenworthy v. Town of Ironton*, 41 Wis., 647; *Kelley v. Town of Fond du Lac*, 31 id., 179; *Wheeler v. Town of Westport*, 30 id., 392; *Houfe v. Town of Fulton*, 29 id., 296; *Kavanaugh v. Janesville*, 24 id., 618; *Perkins v. Fond du Lac*, 34 id., 435; *Gower v. C., M. & St. P. R'y Co.*, 45 id., 182; *Roberts v. C. & N. W. R'y Co.*, 35 id., 679; *Gale v. N. Y. C. & H. R. R'y Co.*, 13 Hun, 1; *Wooley v. G. S. & N. R. R. Co.*, 83 N. Y., 125; 2 Thomp. on Neg., 1199, 1202–4.    Under the circumstances of this case the happening of the accident raised a presumption of negligence on the part of the defendant.    1 Thomp. on Neg., 359, sec. 24; *Worster v. 42d St. R. R. Co.*, 50 N. Y., 203; *S. C.*, 3 Daly, 278; *Cuddeback v. Jewett*, 20 Hun, 187; *Rockwell v. Third Ave. R. R. Co.*, 64 Barb., 438; *S. C.*, 53 N. Y., 625; *Fash v. Third Ave. R. R. Co.*, 1 Daly, 148; *Carpenter v. C. P., N. & E. R. R. R. Co.*, 11 Abb. Pr. (N. S.), 416; *Conroy v. 23d St. R. R. Co.*, 52 How. Pr., 49; *Wooley v. G. S. & N. R. R. Co.*, 83 N. Y., 121; *Payne v. T. & B. R. R. Co.*, id., 572.

ORTON, J. The county court granted a nonsuit at the close of the testimony of both parties. The rule for granting nonsuits in a case tried with a jury is correctly stated by the learned counsel of the appellant. "That a nonsuit should not be ordered when the evidence, giving it the most favorable construction for the plaintiff that it will possibly bear, tends to prove the facts necessary to a recovery." *Schomer v. Hekla Fire Ins. Co.*, 50 Wis., 575; *Jucker v. C. & N. W. R'y Co.*, 52 Wis., 150; *Gower v. C. M. & St. P. R'y Co.*, 45 Wis., 182; *Spensley v. Lancashire Ins. Co.*, 54 Wis., 433. The question of negligence of the defendant, or of contributory negligence of the plaintiff, is peculiarly a question for the jury where there is any evidence tending to show either. The court should not take the case from the jury where the evidence would warrant a verdict for the plaintiff. This principle is in consonance with the rule of this court, that a judgment will not be reversed on the ground that the verdict is against the evidence, if there is any competent evidence to sustain it, giving it the most favorable construction in favor of the verdict. To sustain these propositions, we need only refer to the authorities in the very full and able brief of the learned counsel of the appellant. To apply these principles a brief statement of the evidence is necessary.

In February, 1881, the plaintiff was driving along the open and traveled track of Clinton street, in the city of Milwaukee, with a horse and cutter. The street is paved and much traveled. There are two tracks or double track of a street railway of the defendant along this street, and at a point opposite the defendant's car barn there is a turn-table, with tracks or rails thereon at right angles, and one of these tracks leads to the car barn. The turn-table revolved in an iron rim on the outer surface in which it turned. There were four notches — one on each side of the table — to fasten the turn-table in this rim, where the catch

or latch just fits in when it is down. The catch or latch is from six to ten inches in length, an inch and a quarter or half in width, made of iron or steel, working on the table by a hinge, and held down and kept in place by its own weight only. At this time it was much worn and loose. This table was put down in 1876. Cars ran over it every six or seven minutes. Turn-tables so fastened are not now in use on other roads, and only one of the turn-tables of this kind on the defendant's road; and those now in common use are kept in place by working tightly, and are not easily moved within the rim or groove. Tables like this have been in common use, but have been superseded by the other plan. The traveled track of the street was over this table, and the plaintiff had driven over it before, but never saw the catch or latch out of place. The hinge was much worn, and had never been repaired, and it was liable to stand slanting, and to catch on to the runner of a sleigh passing over it. The plaintiff was driving, not very fast, and less than seven miles an hour, and while passing over this turn-table this catch caught in the runner of his cutter and caused the damage complained of. The catch was so out of place as to stand up considerably above the table.

The statute (sec. 1862, R. S.) which provides that street railways "shall be constructed upon the most approved plan for such roads," is merely declaratory of the common law, and there can be no question but that it is the duty of a street railway company to construct such roads, and all the conveniences thereof, and to maintain them, by the use of the common and approved means, and so as at least to be no obstruction to the use of the street by, or to the necessary convenience of, the traveling public thereon. The statute in which the common-law duty is declared also provides that "every such road shall be subject to such reasonable rules and regulations as the proper municipal authorities may by ordinance from time to time prescribe." But this does not

confer the power upon the city to repeal this general law by ordinance (*Horn v. C. & N. W. R'y Co.*, 38 Wis., 463; *Alton & U. A. H. R'y & C. Co. v. Deitz*, 50 Ill., 210); but if it did, there was no evidence that any such ordinance had ever been made.

The duty of using "the most approved plan" does not stop or cease with the original construction. If it were so, then there would be no duty to repair, or to adopt any new plan when the old one had been found by full trial and experience to be inadequate, insufficient, or dangerous. The most approved methods and plans must be maintained with a view to the public safety. The old plan might at the time of construction have been considered adequate and sufficient, and have been generally in use, but afterwards may have been as generally abandoned, because proved on trial not to be so, and a more approved plan have been adopted, as in this case. Can it be contended that it is not the duty of this company to also abandon such old and insufficient and dangerous plan, and adopt a safer and the more approved plan in general use? But aside from this special duty there is a continuing duty and obligation resting upon the company, in consideration of its use of the public streets, to consult all the time the safety and convenience of travelers thereon, consistent with the full enjoyment of its own privileges and franchises. The company has no greater right to the use of the streets than the public, and it being thus a joint use of the street, neither the company nor the public has any right to make it dangerous for either in their proper use of it. "The care and skill to be exercised by the company in the construction and *maintenance* of their track in a public street are of much higher degree than would be imposed upon them under circumstances of a different character." *Mazetti v. N. Y. & H. R. R. Co.*, 3 E. D. Smith, 98. It is said that railroads are so much more dangerous than street railways that the degree of care required of them is greater. But if

this complaint is true, even street railways may be danger-
ous to travelers on the public streets as well.    The principle
cannot be very different so far as the duty, care, and dili-
gence of the company are concerned.    Those who travel on
the street have a right to suppose and presume that the turn-
table of a street railway therein, and over which the travel
is accustomed to go, is safe, and properly constructed and
maintained.    *Alton & U. A. H. R'y & C. Co. v. Deitz*, 50 Ill.,
210; *Fash v. Third Avenue R. R. Co.*, 1 Daly, 148; 2 Thomp.
on Neg., 1232.

The true rule is laid down in *Read v. Morse*, 34 Wis., 315,
in respect to the duty of a steam-tug owner, requiring him
to avail himself of the best methods and latest discoveries of
science to prevent the escape of fire which it was reasonable
to require him to adopt; and also in *Spaulding v. C. & N. W.
R'y Co.*, 30 Wis., 110, in respect to the management of rail-
ways.    The degree of care required in such cases may be
very high, but at least a reasonable degree of care is required
by the same rule of street railways, and the duty to adopt
the most approved plans and appliances is the same in both
cases.    The case of *Wooley v. G. S. & N. R. R. Co.*, 83 N.
Y., 121, is very much in point as to the use of the public
streets for railway tracks and switches.    The court said:
"It is manifest that it was a question of fact, and *to be passed
upon by the jury* under proper instructions from the court,
whether the defendant in this case used a switch *that was
the best for the purpose in general and acknowledged use*, and
laid down with proper skill and care, in a proper manner, and
*so kept and used it*.    The defendant might have adopted a
kind of switch that experience had condemned, *or refused to
adopt one that experience had shown to be the best;*  .  .  .
or, having first put it down well, had suffered it, or the pave-
ment about it, to get out of proper position, so that there
was at first *or at last* an obstruction in the public way need-
lessly or unreasonably dangerous to passers over it.'  These

were questions for a jury to try and determine." *McArthur v. G. B. & M. Canal Co.*, 34 Wis., 139.

In this case, so far as the evidence was admitted by the court, it appeared that the catch or latch on the turn-table was out of place, and projected upward sufficiently to catch the runner of the plaintiff's cutter and upset it. It was old, worn, and loose, and liable to get into that condition, especially when there was snow in the street and on the turn-table. That kind of fastening had been abandoned on the roads of other companies, and of this company also as a rule, and were not in common use, and another plan or method had been generally adopted to dispense with such a fastening. That this catch was out of the notch and so projected upwardly, so as to render travel over it with a sleigh dangerous, tends strongly to prove that it was not at the time a proper appliance for the purpose, and that it was not the right thing to be used under the circumstances.

These facts certainly present the questions whether the defendant was not negligent in not adopting a more approved plan of fastening this turn-table, and whether the company was not negligent in allowing the catch to remain worn and loose, so as to be liable to so project and fasten on the runner of the plaintiff's cutter; and, if the question of notice is in the case, whether the defendant did not have sufficient notice of the condition of the catch when its employees passed over this turn-table every six or seven minutes, and it being directly in front of the defendant's car barn, and cars were frequently run over it into the barn, and every time this catch had to be raised up if it was in place in the notch. These questions were clearly for the jury to decide, and not the court; for this evidence at least tended to prove the negligence of the company.

But it is said that the plaintiff was negligent in driving too fast, and ought to have known that this catch was out of place, having before passed over the turn-table. As matter

of law, is it negligence to drive with a speed of less than or nearly seven miles an hour in a public street? Is such speed negligence *per se*? If not, that also was a question for the jury, and not for the court. The plaintiff had not observed that the catch was out of place if he had driven over the turn-table before, and there was no evidence that the catch at that time was out of place. But at any rate it was a question of notice or presumptive knowledge, which should have been submitted to the jury if there was any evidence of it. So long as the constitution and the laws provide for a jury trial of issues of fact, the right should be guarded and preserved to all parties, where there are controverted facts pertinent to the issues. It would be worse than useless, and a merely ceremonious formality, to impanel a jury in the cause, and, as in this case, to then dispense with their service of rendering a verdict after they had heard all the testimony and the facts established by it which tended to maintain the plaintiff's cause of action. A nonsuit in such a case as this is not an example to be followed. This unwarrantable nonsuit, on the facts, is sufficient to justify a reversal of the judgment.

But there was certain testimony offered and rejected by the court, the competency of which ought to be determined before another trial. Isaac Ellsworth, a witness for the plaintiff, who had testified that he had been in the street-car business over eight years, and had been connected with the Milwaukee City Railway and was familiar with the details of the street-car business and with the construction of *turn-tables*, and that he derived his knowledge of turn-tables from the use of them, and that he had seen the turn-table in question, and that he was at the head of the Milwaukee City Railway at one time, was asked, "What turn-tables do you use now?" After objection by the defendant's counsel, the plaintiff's counsel said to the court, "I desire to show by Mr. Ellsworth the kind of turn-tables

in use by railway companies generally, and to show that this is not the most approved appliance in use in street railroads." The objection was sustained. He was asked further, "If, with your knowledge of turn-tables, you consider this turn-table here one of the most approved turn-tables in use?" Objection to this was also sustained. He was again asked, "Is there not a defect in this turn-table, and would it not be improved by some arrangement to fasten down the catch?" Objection to this was also sustained. Why? Was not the witness an expert, and were not the questions pertinent to show that the defendant did not use the most approved plan of fastening turn-tables in this instance? The question, "Do you use them?" was obviously introductory only to what the counsel stated to the court he wished to prove. Stephen Kenney, another witness for the plaintiff, testified that he was a carpenter and joiner, and for the last four years had been connected with the Milwaukee City Railway, and that he had made turn-tables for that line; that he had seen the turn-table in question and heard a description of it on this trial. He was then asked, "From your knowledge of turn-tables do you consider *that* (meaning the turn-table in question) the most approved turn-table in general use?" And again, "Do you consider *that*, from your knowledge of turn-tables, a safe and proper turn-table?" Objection that the witness was not an *expert* was sustained. Why was he not an expert? He had been a builder of turn-tables, and was a practical mechanic, and is presumed to be skilled in building turn-tables, and doing other work in his line. If he was an expert, the admissibility of his testimony in response to these questions was not objected to. Under the authorities there can be no doubt but what both of these witnesses were experts, and but what their testimony in response to the questions would have been competent, pertinent, and material. *Carpenter v. C. P., N. & E. R. R. R. Co.,* 11 Abb. Pr. (N. S.), 416; *Payne*

*v. T. & B. R. R. Co.*, 83 N. Y., 572; *Brabbitts v. C. & N.
W. R'y Co.*, 38 Wis., 289. There was no good ground for
rejecting this testimony.

*By the Court.*— The judgment of the county court is
reversed, and the cause remanded for a new trial therein.

