FISHER, Administrator, Respondent, vs. WAUPACA ELECTRIC LIGHT AND RAILWAY COMPANY, Appellant.

*January 13—February 1, 1910.*

*Street railways: Killing of traveler on highway: Frightening horse: Negligence of motorman in failing to stop car: Duty as to fenders on cars: Evidence: Instructions to jury: Cause of death: Appeal: Questions of fact: Proximate cause: Damages.*

1. In an action for death of a person who was thrown from a buggy upon the track and run over by an electric car, the evidence is *held* sufficient to warrant the jury in finding that the motorman was negligent in failing to stop the car before it reached the deceased.

2. The enactment of ch. 390, Laws of 1907 (sec. 1636—58, Stats.), making compulsory the use of fenders on the cars of street and interurban railways, made manifest at once the legislative intent of the necessity for such safety devices, even though the act was not to go into effect until a future date.

Fisher v. Waupaca E. L. & R. Co. 141 Wis. 515.

3. In view of the common-law duty of a street railway company so to use the streets as to regard the safety of the traveling public, and of sec. 1862, Stats. (1898), providing that railways must be constructed on the most approved plan, and of provisions in the franchise of the defendant company under which it was bound to use all reasonable care to prevent injury to persons or property, failure to equip its cars with fenders after the enactment of ch. 390, Laws of 1907, may have been negligence on the part of defendant, even though at the time in question said act of 1907 had not yet gone into effect.

4. In an action for the death of a person run over by a street car which was not equipped with a fender, testimony of an expert that the most approved plan of construction required a fender to pick up objects in front of the car was competent.

5. It was not error in such a case to exclude evidence that a good-sized dog on a track in another city was not protected by a fender.

6. Submission to the jury in such case, as a matter of fact to be determined by them, of the question whether defendant's duty to the public required it to equip its cars with fenders, was not error.

7. An instruction to the effect that the absence of the fender would not render defendant liable unless the jury believed that, if a fender had been provided, it "would have contributed or tended to protect or save [the deceased] from death or injury," was not erroneous and was in better form than had the quoted portion read "would have in fact saved the deceased from death."

8. Where, as a rapidly moving street car approached, a horse reared and suddenly turned around, throwing one of the occupants of the vehicle upon the track in front of the car, which passed over her, and the motorman testified that when the horse reared he apprehended danger, it cannot be said that the injury could not have been foreseen.

9. The evidence in this case was sufficient to warrant the jury in finding that plaintiff's intestate was killed by defendant's car running over her and not by her fall from a buggy to the track.

10. Upon appeal, on the question whether the verdict is supported by the evidence, the opinion of the trial judge, who refused to disturb the verdict, is entitled to weight.

11. Admission in evidence of the franchise under which a street railway company was operated was not error prejudicial to the company, even if such franchise was admitted in the answer.

12. The competency of a motorman at the time of an accident being in question, evidence as to his competency when he first began to work, a few days before, was relevant and material.

13. Failure, in charging the jury, to define proximate cause is not error where no specific instruction relating thereto was requested.

14. In an action for death of a person who, by the sudden turning of a frightened horse, was thrown from a buggy upon a street-car track and was run over by a car, an instruction to the jury that "there is or may be a difference between the operation of such a car on city streets and upon country roads outside of the cities, where opportunities are not so frequent for horses and drivers to become accustomed to the presence and dangers of running such cars," was not prejudicially erroneous.

15. An instruction to the effect that, if the motorman had reason to apprehend from what he saw that the horse was likely to become unmanageable, it was his duty to use his best efforts, making use of all the means at his command and all the methods and appliances upon his car, to stop the car as quickly as could thereby be done, if so doing would be likely or tend to avoid injury to persons or property, was not erroneous, there being evidence that the motorman did not use the reverse lever and that its use was necessary to make an emergency stop.

16. An award of $3,500 for the death of a well-educated married woman, thirty-eight years old, who before marriage was capable of earning $60 per month, and since her marriage had, besides performing her household duties, assisted her husband in performing his duties as railroad station agent, was not excessive.

MARSHALL, J., and WINSLOW, C. J., dissent.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This action was brought by *J. F. Fisher,* administrator of the estate of Janet W. Fisher, deceased, against the defendant to recover damages for the death of Janet W. Fisher, caused by defendant's negligence in equipping and operating its cars on its electric railway. The case was submitted to the jury on a general verdict, and the jury found in favor of the plaintiff and assessed his damages at $3,500. The defendant owns and operates an electric railroad extending from the Wisconsin Central depot in the city of Waupaca to the Grand View Hotel on the Chain of Lakes west of Waupaca city, the length of the road being a little less than five miles. The road extends through the town of Farmington in Waupaca county. On the 16th day of April, 1908, in the afternoon, in the town of Farmington, and eighty rods west of the city limits of Waupaca, Mrs. Fisher was killed, and her death is claimed by plaintiff to have been caused by being run over by a car on the defendant's road going westward at the point in question.

The deceased and her sister-in-law, Mrs. Wolcott, were riding in a single rig or buckboard going toward the city of Waupaca, when the horse became unmanageable at the approach of the car and suddenly turned around, throwing Mrs. Fisher out upon the car track in front of the approaching car, which passed over her. The litigated questions in the case were whether the defendant was guilty of any negligence which was the proximate cause of the injury, and the amount of damages. A motion to direct a verdict for the defendant was denied, and the usual motions after verdict were made and overruled and due exceptions taken, and judgment entered on the verdict in favor of the plaintiff, from which this appeal was taken.

*C. H. Hamilton* and *B. B. Park,* for the appellant.

For the respondent there was a brief by *Gill, Barry & Mahoney,* and oral argument by *T. H. Gill.*

The following opinion was filed F bruary 1, 1910:

KERWIN, J.    Error is assigned because the court refused to direct a verdict in favor of the defendant, for the reason that neither negligence nor proximate cause had been shown upon the undisputed evidence. This contention is based upon the claim that the death of Mrs. Fisher resulted from an unavoidable accident, even if she were killed by the defendant's car, and further that it does not appear from the evidence that she was killed by the car, but by being thrown from the buckboard in which she was riding. The questions involved under this head are purely questions of fact. Without going into any extended discussion of the evidence we will refer briefly to some of the leading facts which the evidence tends to prove.

The evidence shows that upon the day in question the deceased, without negligence on her part or on the part of the driver, Mrs. Wolcott, was thrown from a buckboard in which she was riding upon the street-car track in front of an approaching car, run over, and killed. The car was being oper-

ated by a boy seventeen years of age at a salary of $25 per month, who prior to the accident had had very little experience as motorman, and did not use all the means at hand necessary to stop the car as quickly as it might have been stopped before running over the deceased. The track was straight and level and the horse seen at a distance of 500 or 600 feet, and when the car was within between 200 and 250 feet from the horse it reared up and acted frightened and the motorman realized the danger. The horse reared up a second time immediately after the first, turned quickly around toward the track, overturning the buckboard, and throwing deceased upon the track some twenty to twenty-five feet ahead of the car, which had been moving at the time the horse first reared up at from twelve to twenty miles an hour. Deceased fell with her breast upon the rail, head between the rails and about six or seven feet from the buckboard from which she was thrown, and her feet about two feet from the buckboard. The car passed over the body and stopped between thirty and forty feet from it. Immediately thereafter deceased made movements of the lips and sounds as though endeavoring to speak. Upon examination it was found that the neck was broken, the back broken in two places, and one arm broken. The car was equipped with a hand brake, a controller lever to regulate the current, and reverse lever to change the gear and machinery. In order to make an emergency stop the current must be shut off, the machinery reversed, the current again applied, and the hand brake used. Under the circumstances the car could have been stopped, upon the appearance of the danger, in forty to fifty feet. The motorman understood the appliances, but failed to use the reverse lever or current, relying upon the use of the hand brake. The ordinance or franchise under which the defendant operated provides:

"Sec. 22. Employees of said street railway shall use all proper and reasonable care and diligence to prevent any injury to persons and property, and on the appearance of danger

to any one on or near the track the cars shall be stopped when by so doing injury may be avoided, or when teams become so frightened as to be liable to become unmanageable by their drivers."

The car was not provided with a fender, although fenders had been in use many years prior to the time of the injury and since. A physician who examined the body shortly after the injury testified that death was instantaneous, and might have been caused by the fall from the buckboard or by the passage of the car over deceased; and further says that there were very few and slight bruises and practically no external marks; that the neck might have been broken by the violent rotation of the head. There is also some evidence tending to show that the current was not shut off at all, but that the motorman stopped the car by use of the hand brake, and that immediately after the accident he exclaimed, "If I had only thought to turn off the controller." The evidence further shows that the horse reared up twice; there could not have been half a minute between the time he reared first and last; he fell close to the track at or about the time the occupants fell from the buckboard, which was cramped on a forward wheel, causing it to tip over. The most approved plan of construction of defendant's street car required a fender to pick up objects in danger of being run over by the car. The fenders put on defendant's cars after the injury, and which were on at the time of trial, were an inch or inch and a half above the rail.

The foregoing is the substance of some of the material evidence produced upon the trial bearing upon the error assigned on refusal to direct a verdict. Now upon the facts in evidence the main questions were: Was there sufficient evidence to warrant the jury in finding that the motorman was negligent in failing to stop the car before it came in contact with the deceased? and, Was deceased killed by the car? It is insisted by appellant that without the evidence of a witness,

Woodnorth, there is not sufficient evidence to support the verdict, and that his evidence is incredible. Woodnorth was not impeached. He appeared to be a man of education, good standing, and disinterested, and was in position to see and observe what occurred. Moreover, his evidence, while it does not coincide exactly with that of the witness Smith as to the distance from the horse to the car at the time the horse reared up, corroborated his evidence in many respects. Smith testified in substance that he was on the car and saw the horse and two ladies in the conveyance coming when 250 to 300 feet away; that he turned his face in response to a friend who spoke to him, and when he turned back he saw the horse rear, turn half across the road, and jump and continue to jump, and the next jump he made he turned the buggy over; that his attention after he first saw the horse was diverted just for a second, and when he next looked at the horse he was twenty-five feet from the track and the car was probably 100 feet from deceased; that he felt the brake being set, and that was what called his attention to look at his friend; that he felt the jar; that he felt the brake before he saw the horse in the air. So it will be seen that this evidence, properly considered, with due allowance for slight variance as to distance and time between the first sight of the horse and the accident, corroborated Woodnorth. It is quite apparent that the motorman saw the horse rear and apprehended the danger when more than 100 feet from him, even upon the evidence of Smith, and this rearing was doubtless the second time. Even on this evidence the jury would have been justified in finding that due diligence was not used by the motorman, because there is credible evidence that the car could have been stopped by the proper use of the appliance within a distance of seventy-five feet or less when going at fifteen miles per hour, and there is evidence that it was going slower and the car more than 100 feet away when the horse was rearing and plunging toward the track. Moreover, the car ran from thirty to forty

feet after striking deceased, which according to Smith's evidence would make a run of at least 130 or 140 feet after the horse reared and jumped toward the car, while the car could have been stopped by proper management within sixty-five or seventy-five feet.

There is also the question of whether the car was constructed upon the most approved plan, in consequence of the lack of a fender; and while ch. 390, Laws of 1907 (sec. 1636—58, Stats.), providing for use of fenders, did not go into effect until after the injury in this case, it was passed before, and made manifest at once upon its passage the legislative intent of the necessity for such safety device. At common law the defendant was bound to so use the street as to regard the safety of the traveling public. Its use of it was a joint use with the public, and neither defendant nor the public has a right to endanger the use by the other. *Fitts v. C. C. R. Co.* 59 Wis. 323, 18 N. W. 186. And independent of the rule at common law and sec. 1862, Stats. (1898), which provides that street railways must be constructed on the most approved plan, the defendant under its franchise was bound to use all reasonable care to prevent injury to persons and property, and on the appearance of danger stop its car when by so doing injury might be avoided.

The point is made that the resultant injury could not have been foreseen, because no one could apprehend that the horse would turn and jump upon the track in front of the approaching car. But the motorman testified that when the horse reared he apprehended danger, as he well might when a horse so acted in such close proximity to a rapidly approaching car. The point is not well taken. *Butler v. M. & St. P. R. Co.* 28 Wis. 487; *Kujawa v. C., M. & St. P. R. Co.* 135 Wis. 562, 116 N. W. 249; *Sarles v. C., M. & St. P. R. Co.* 138 Wis. 498, 120 N. W. 232.

Again, it is argued that the negligence of defendant, if negligence was shown, was not the proximate cause of the injury,

because it does not appear from the proof that the deceased was killed by the car. Of course upon this point, as well as upon the point of defendant's negligence, all that was necessary was sufficient evidence from which the jury would be entitled to find the fact. The vehicle in which deceased and Mrs. Wolcott were riding was quite low, a buckboard, and deceased was not thrown far when she fell; her feet being only about two feet from the buckboard. From the external evidence of bruises and injuries the inference is strong that she was killed by being run over by the car and not by being thrown from the buckboard. The marks on the body and its position and appearance when found, in connection with the further fact that the horse fell at or about the time the buckboard tipped and the occupants fell out, further support the idea that the deceased was killed by the car and not by the fall from the buggy. There are other facts and circumstances which we need not detail supporting the inference that the deceased was killed by the car and not by the fall from the buckboard. We have also the judgment of the learned trial judge who heard the evidence, and whose opinion on that, as well as upon all other facts in the case, on refusal to disturb the verdict, is entitled to weight. We are therefore forced to the conclusion that we should not disturb the verdict on the question of defendant's negligence or the proximate cause of the injury. *Wilson v. C. V. E. R. Co.* 120 Wis. 636, 98 N. W. 536; *Gessner v. Roeming,* 135 Wis. 535, 116 N. W. 171; *Gould v. Merrill R. & L. Co.* 139 Wis. 433, 121 N. W. 161.

Error is assigned upon the admission of the ordinance or franchise of the defendant in the town of Farmington, on the ground that said franchise is admitted in the answer; hence the admission of an admitted fact was error. It is at least doubtful whether the answer admitted the franchise alleged in the complaint; but even if it did there was no prejudicial error in admitting the evidence.

Error is assigned on the admission of evidence respecting the competency of the motorman when he first began to work, on the ground that his competency, if material at all, should have been confined to the time of the injury.   But his knowledge of the work at the time he began work was competent as bearing upon his competency at the time of the accident, in view of his limited experience as a motorman before the injury.   His competency was in issue and the evidence material and relevant.   Nor was there prejudicial error in the admission of evidence respecting the condition of the lever of the controller after the accident; its weight was for the jury.

Error is assigned on the admission of the evidence of an alleged expert respecting the proper equipment of the car, on the ground that it was not shown that he was qualified to testify as an expert.   The evidence respecting his qualification to testify as an expert was sufficient, and his evidence to the effect that the most approved plan of construction required a fender to pick up objects in front of the car competent, in view of statutes and the franchise.   *Fitts v. C. C. R. Co.* 59 Wis. 323, 18 N. W. 186; *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 612, 40 N. W. 487; *Wright v. Milwaukee E. R. & L. Co.* 95 Wis. 29, 69 N. W. 791.

There was no error in excluding evidence offered to show that a good-sized dog on a track in Rockford, Illinois, was not protected by a fender.

Several errors are assigned upon the charge.   The court charged the jury that the defendant's car was running at a negligent and reckless rate of speed, but this was said by way of presenting to the jury the issues in the case as claimed by the plaintiff, and the court in another part of the charge distinctly told the jury "that the rate of speed of the car as it approached the conveyance in which Mrs. Fisher was riding was not negligent."   Nor was the statement of the provisions of the ordinance prejudicial error when considered in connection with the whole charge.   The whole charge, when read to-

gether, respecting the duty of the defendant under the franchise as well as at common law was a fair statement of the law as applied to the facts proved.

The error assigned on failure of the court to define proximate cause is without merit. · No request was made for such specific instruction, hence no prejudice resulted from failure to give it. *Miles v. Stanke,* 114 Wis. 94, 89 N. W. 833.

Error is assigned on the charge respecting use of fenders as a proper equipment. The subject has been heretofore referred to in regard to admission of evidence. The evidence showed that fenders had been in use, and were necessary in complying with the law as to the most approved plan of construction. The court charged:

"Whether or not the defendant, as a duty to the public, should have provided a fender as a necessary part of the equipment of the car in the interest of safety to the public or of persons who may come or be upon or in the vicinity of the defendant's cars, is a question of fact to be determined by you, as jurors, from the whole evidence. If you shall be therefrom affirmatively satisfied, in the manner stated, that it was such duty of the defendant to provide and maintain a fender, in such case you should so find. If not so affirmatively satisfied that it was the duty of the defendant to operate its cars with a fender, in such case you should so find."

We find no error in this portion of the charge. Sec. 1862, Stats. (1898); *Fitts v. C. C. R. Co.* 59 Wis. 323, 18 N. W. 186; *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 375, 39 N. W. 856.

Error is assigned on the following portion of the charge:

"There is or may be, however, a difference between operation of such car on city streets and upon country roads outside of the cities, where opportunities are not so frequent for horses and drivers to become accustomed to the presence and the dangers of running such cars."

The obvious intention of the learned judge was, in giving this portion of the charge, to impress upon the jury that all the facts and circumstances surrounding the situation must be

taken into account. It appears from the photographs produced upon the trial that the street railway track was on the south side of the highway, leaving the traveled track for teams wholly on the north side, so that teams were compelled to travel on the north side of the car going either way, contrary to the usual custom of passing where the track is in the center of the street. This and other facts and circumstances, some of which are mentioned by counsel for respondent and apparent to the trial judge, may well have justified the distinction drawn in the charge. But in any event we cannot say prejudicial error was committed in this regard.

The following portion of the charge is complained of:

"In this case, if you shall find from all the evidence before you that the motorman, under the circumstances shown, had reason to apprehend from what he saw that the horse was likely to become unmanageable and run away or otherwise injure himself or the persons in the carriage, it was his duty to use his best efforts, making use of all the means at his command and all the methods and appliances upon his car, to stop the car as quickly as could thereby be done, if so doing would be likely or tend to avoid danger of injury or danger to any persons or property in peril. If you shall so find that the motorman neglected to do anything so reasonably required of him, under the circumstances as above stated, if they existed, and such failure or negligence upon his part was the proximate cause of the death of Mrs. Fisher, it will be your duty to return your verdict for the plaintiff in this action."

· We find no prejudicial error in this part of the charge. It is said that the evidence is undisputed that by the use of the reverse lever the car could not have been stopped in the distance that it was. But even if it were, it would not make the charge reversible error. But the evidence is not undisputed. There is evidence that to make an emergency stop the reverse current is necessary.

Nor do we find prejudicial error in the portion of the charge to the effect that if a fender had been provided it would have "contributed or tended to protect or save Mrs. Fisher

from death or injury," on the ground that the instruction should have been to the effect that the fender would have in fact saved Mrs. Fisher from death. We think the instruction was in better form as given than as suggested.

It is lastly insisted that the damages are excessive. The deceased was thirty-eight years of age, well educated; before marriage was capable of earning about $60 a month, and since her marriage, in addition to performing her household duties, had rendered assistance to her husband in the performance of his duties as railroad station agent. Under the repeated decisions of this court we do not feel justified in holding that the damages awarded are excessive. *Stutz v. C. & N. W. R. Co.* 73 Wis. 147, 40 N. W. 653; *Brown v. Vannaman*, 85 Wis. 451, 55 N. W. 183; *Donovan v. C. & N. W. R. Co.* 93 Wis. 373, 67 N. W. 721; *Hayes v. C., M. & St. P. R. Co.* 131 Wis. 399, 111 N. W. 471; *Ewen v. C. & N. W. R. Co.* 38 Wis. 613; *Ryan v. Oshkosh G. L. Co.* 138 Wis. 466, 120 N. W. 264; *Pfister v. Milwaukee F. P. Co.* 139 Wis. 627, 121 N. W. 938; *Wankowski v. Crivitz P. & P. Co.* 137 Wis. 123, 118 N. W. 643. We think the case was fairly tried and no prejudicial error committed.

*By the Court.*—The judgment of the court below is affirmed.

The following opinion was filed February 19, 1910:

MARSHALL, J. (*dissenting*). I think the case was submitted to the jury upon a wrong theory and has been likewise affirmed here.

The idea of the learned circuit judge was, and the idea of my brethren likewise is, that if a reasonably careful motorman could have stopped the car within a space less than 100 feet, then it was for the jury to say whether the motorman, in this instance, did all he ought to have done or not, since there was evidence from the mouth of one witness that the horse

was that distance ahead of the car when it first was observed in a condition to suggest necessity of stopping the car to prevent injury to the driver.

Now we may safely admit, for the purpose of this case,. that, as the witness put it, the horse was probably 100 feet away when he first showed signs of fright, though the evidence· is so strong that the distance was much less, it is difficult to see how twelve men could have concluded to a reasonable certainty that the distance was as suggested; and we may also· safely concede that a car, properly equipped and managed, can be stopped in a distance of seventy-five feet. Do those· concessions justify the finding by the jury and affirmance ⋆ here? I do not think so.

Appellant owed no duty, at its peril, to stop the car as soon as a car properly equipped could be stopped on such a track as· the one in question. There is, in my judgment, no rule in the law of negligence requiring such a high degree of care. The limit of appellant's responsibility was to bring the car to a stop as soon as a reasonably prudent motorman, in the exercise· of ordinary care, his car being properly equipped, could be reasonably expected to, under the circumstances. It will oc-- cur, it would seem, to an ordinary person of ordinary experience in life, that an emergency stop in the circumstances· here must be quite different from a practice emergency stop,. the motorman having clearly in mind what he is to do, i. e. to see how quickly he can bring his car to a stop when going at fifteen miles per hour. It may well be that the stop could be made within a space of seventy-five feet and, with the same· car, the motorman proceeding without reason to apprehend danger till confronted with imminent peril of taking human life, as in this case, such motorman using all the care which· could be reasonably expected of an ordinarily careful and skilful operator, the car would go twice seventy-five feet before coming to a stop. This class of cases do not properly go upon possibility but upon reasonable probability, under all the cir-- cumstances. Such, it seems, is the law of negligence.

The car, in this instance, was running twenty feet or more per second, and rightfully so. A man of extraordinary care may comprehend a situation instantly and at the same instant do the proper thing. But that is not the standard by which to measure what ought to have been done in this case. What could reasonably be expected of the ordinary man under the circumstances of such a sudden and imminent peril? That is the point. It takes a little time for the inertia of the human mind, ordinarily, to be overcome. After being put in motion the actor is not to be held wanting in ordinary care if he does not instantly do the proper thing and with necessary efficiency. One, in acting in such great peril to escape doing injury to another, should not be held to any greater efficiency, as to doing the proper thing, than one acting under the same circumstances to escape being injured. It has often been said that a person is not guilty of a failure to exercise ordinary care because he fails to exercise the greatest prudence or the best judgment in a case when he is required to act suddenly or in an emergency. *Valin v. M. & N. R. Co.* 82 Wis. 1, 51 N. W. 1084.

Looking at the case at the very best for respondent, there was the brief space of five seconds, perhaps not four, from the instant the peril to deceased was apparent, till the unfortunate final event occurred. In that brief time the ordinary man of ordinary skill was called upon to comprehend the danger, to make the necessary movements, at least two in number, and for the appliances set in motion to stop the car to do their work; about the time required, going at a pretty rapid walk, to cover twenty feet. The ordinary mind, under the circumstances of this case, would require one or two seconds to act. One or two more would be required to put the appliances in operation to stop the car, leaving thus, at the most, probably not over two for the appliances to become effective. Does the law hold one guilty of actionable inadvertence if, perchance, he fails, under such circumstances, to prevent the happening of an injury? I do not think so.

The occurrence in this case, to my mind, was purely accidental. The case should have been taken from the jury, and the failure to do so should be remedied here.

There are other reasons for a reversal which I will not discuss. The evidence, to my mind, fails to prove that death was caused by the car. There is as good reason to believe that it was caused by the fall as by the collision. The right of the matter is involved in conjecture. In any event, the fright of the horse seems, very clearly, to have been the proximate cause of the unfortunate event.

Winslow, C. J.     I concur in the above views.