BERNARD GROSS, ADMINISTRATOR, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED JUNE 23, 1914. No. 17,690.

1. **Street Railways:** NEGLIGENCE: QUESTION FOR JURY. As a general principle, a street car company is not liable for accidents as a result of horses becoming frightened by the usual operation of its business, provided that its employees are not guilty of any negligence. If through the operation of the street car after the frightened condition of the animal has become known, or should have become known, to the motorman if he is in the exercise of ordinary care, damage results, the proper test is whether those in charge of the car acted in the manner that persons of ordinary prudence would have acted in like circumstances. It is not the injury that creates the liability, but the fact that the street car company through its agents or servants has been guilty of some negligent act or omission to act, but for which the injury would not have occurred, and, where the evidence is conflicting, the question of negligence is for the jury.

2. **Evidence:** OPINION OF WITNESS. It is not erroneous to exclude opinion evidence as to ultimate facts which are for the jury to determine.

3. **Street Railways:** NEGLIGENCE: QUESTION FOR JURY. The question whether the defendant was negligent in failing to provide a motor car, which was being used to haul a work car, with a fender, *held* to be a matter for the jury to determine.

4. **Appeal:** ADMISSION OF EVIDENCE. A judgment will not be reversed because of an error in the admission of testimony, unless it is reasonably apparent that such testimony is prejudicial to the substantial rights of defendant.

5. **Street Railways:** SAFETY APPLIANCES. In operating a motor car and heavy trailer on the public streets of a city, a street car company is

bound to use the same degree of care with respect to equipment with safety appliances as is usual in the operation of passenger cars.

6. **Instructions** examined, and *held* not erroneous.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*John L. Webster, W. J. Connell* and *W. Ross King,* for appellant.

*Charles S. Elgutter, contra.*

LETTON, J.

Arthur Gross, a boy between 15 and 16 years of age, was killed in a street railway accident. This action is brought by his administrator for the benefit of his father. Plaintiff recovered, and defendant appeals.

It is alleged in the petition that the defendant was operating a work train, composed of a motor car and a trailer loaded with cinders, on Thirtieth street, in Omaha, at an excessive and dangerous rate of speed; that the motor and trailer were not supplied with proper brakes, guards and fenders; that the motor car was old, was without an emergency brake, and the brakes were defective and inefficient; that the deceased was driving a horse on the west side of the street; he had stopped at a point about 150 feet away from the approaching car, but the horse became frightened and unmanageable, and backed across the track in front of the car; that the motorman, when about 100 feet away, saw that the horse was frightened, that the driver had lost control and that he was backing the cart onto the track; that he knew that the car was not equipped with a fender, and that the brakes were defective, yet he negligently continued running his train at an excessive and unreasonable rate of speed, and failed to stop the same until the collision occurred; that if the car had been equipped with a powerful and effective brake, and if the motorman had exercised proper care, the accident would not have occurred.

The answer is a general denial, a plea of unavoidable accident on account of the sudden nature of the backing of the cart, and of contributory negligence on the part of the deceased.

As developed at the trial, the principal questions at issue were: Whether the car had a sufficient brake; whether defendant was negligent in not equipping the motor car with a fender; whether the motorman was negligent in not seeing that the pony was frightened, and in failing to stop the train in time to avoid the collision.

The first error assigned is that the court erred in refusing to permit the defendant to ask a witness on cross-examination whether the motorman had time or opportunity to stop the car, and whether he made a very quick stop under the circumstances. The witness had described fully all of the circumstances surrounding the accident, and had been cross-examined at length. He testified that before the car struck the cart the pony backed the cart almost instantly upon the northbound track; that when it crossed the rail of that track the motor car was only about 15 or 20 feet south, and was coming north; that the pony backed the cart about on a circle. He was then asked whether it gave the motorman any chance or opportunity to stop his car. The questions excluded were then asked and objected to as asking for a conclusion of the witness. There was no prejudicial error in the refusal to permit these questions to be answered. All of the facts concerning the accident had been minutely detailed to the jury both upon direct and cross-examination, and the jury were as able to draw their own conclusions as the witness was to form his. Another bystander was asked a similar question with a similar result. While it has been held that under similar circumstances it was not error to permit questions of this nature to be answered, this court has taken the view that opinion evidence as to the ultimate fact to be determined by the jury may not be received. *Chicago, R. I. & P. R. Co. v. Holmes*, 68 Neb. 826; *Read v. Valley Land & Cattle Co.*, 66 Neb. 423; *Lindgren v.*

*Omaha Street R. Co.,* 73 Neb. 628; *Hankins v. Reimers,* 86 Neb. 307.

Complaint is made that the court erred in allowing the witness Anderson to testify on redirect that, if he had been running the train which caused the accident, he would have used a track brake. This was a mere conclusion, and the objection should have been sustained. The testimony of the same witness, however, on cross-examination was to the effect that such brakes were only used upon a steep hill on Dodge street, and that the track brake would be useless and impracticable for stopping a car where the track was level, or nearly so, and that in 21 years service as a motorman on all lines, including the Dodge street line, such brakes had only been used about 12 days. Taking the whole testimony, we think no prejudice could have occurred.

It is objected that the court erred in refusing to permit the defendant's master mechanic to testify that the brake was in good condition and reasonably safe and efficient when the car left the shops a short time before the accident. This witness, however, testified that in the fore part of November, 1909, this car was remodeled, and that it had not been out of the shop over two weeks before the accident; that it had been overhauled and the trucks and brakes repaired; that it was fixed up for service on the road; and that the brake was in good condition. He also testified that the brake was such as was originally and customarily used on street railway cars of this type; that the brake shoes applied to all four wheels alike with uniform and proper force, and were in good working order. It is true that an objection was sustained to one of the questions on this subject, but this did not prejudice the defendant, since in other portions of his testimony the witness fully covered the ground.

It is also contended that the court erred in submitting to the jury the question whether the defendant was negligent in not having the car equipped with a fender. An instruction directed the jury that, if they found from the evidence that it was reasonably safe to operate the car

without a fender, then they should acquit the defendant of negligence in that regard, but, on the other hand, if they found that ordinary care required the car to be equipped with a fender, and that it was not reasonably safe to operate the car without it, then they should find the defendant negligent, provided they further found that the absence of the fender was the proximate cause of the death of Arthur Gross. The claim is that this was error, because "fenders never have been and could not be, used upon a motor car used for construction work," for the reason that such cars have a drawbar projecting about 2½ feet from each end of the car, so that either end may be attached to a construction car, and that, on account of the sharpness of the curves at street intersections and other places, a trailer car could not be pulled or shoved around the curve unless the drawbar was of this length, and that it is impracticable to attach a fender where a drawbar is used of this length. The evidence of Mr. Wood, master mechanic, shows that motor cars used for construction purposes are usually operated without fenders; but he was asked this question: "That motor car that was attached to the construction train could have been operated, could it not, by using only one end of the drawhead to attach to the trailers? A. Yes, sir. Q. And the other end where you had a drawhead, that drawhead could have been taken away and a fender placed upon there the same as you have upon passenger cars? A. Yes, sir." There is further evidence as to the use and means of operation of fenders. We are convinced that, although the evidence shows it has not been customary to place a fender in front of such a car, it was entirely proper to submit to the jury whether the defendant was negligent in operating the motor car without a fender in front for the protection of persons upon the highway. While it was proper to show this was not customary, the question whether the use of such cars without fenders on the streets was consistent with reasonable care for the safety of the public was one for the jury. While it is not shown that the ordinances of the city of Omaha required fenders to be placed in front of street cars,

there is evidence to show that the passenger cars are all fitted with fenders, and that the character and means of operation of the fenders are such that, if the motor car had been equipped with one in front, the death of Arthur Gross would in all probability have been prevented. Under this state of the evidence, the question as to whether or not defendant was guilty of negligence in failing to provide a fender was proper to be submitted to the jury. 2 Nellis, Street Railways (2d ed.) sec. 376; *Henderson v. Durham Traction Co.,* 132 N. Car. 779, 44 S. E. 598; *Fritsch v. New York & Q. C. R. Co.,* 87 N. Y. Supp. 942; *Richmond R. & E. Co. v. Garthright,* 92 Va. 627, 32 L. R. A. 220; *Fisher v. Waupaca E. L. & R. Co.,* 141 Wis. 515. The evidence shows that fenders are about six feet wide and project four or five inches on the outside of each rail. Whether the boy fell directly in front of the car, or a little to the side, as the motorman testifies, there was sufficient evidence to go to the jury upon the point as to whether the existence of a fender would have prevented his death.

By instruction No. 5 the court instructed the jury: "It is the duty of the defendant to equip its cars with such appliances for stopping them as are in ordinary and customary use for such purposes. It is not required to furnish any particular appliance or such appliances as will absolutely prevent the happening of accidents, but its duty is fully met if the car in question was equipped with a reasonably safe and efficient brake, such as was in ordinary use on cars of that character." Defendant makes no complaint of this portion of the instruction. The court further said: "And in this connection the plaintiff claims that the car in question should have been equipped with a 'track brake,' while defendant claims that such a brake is not in ordinary use for the purpose of stopping the car, but only for controlling it on steep hills, and the evidence establishes that the only cars of defendant so equipped are those on the Dodge street line passing over the hill at Twentieth and Dodge streets. You are therefore instructed on this point that, even though you believe from

the evidence a quicker stop could have been made at the time of the accident in question, if the car had been equipped with a track brake, and the collision might thereby have been avoided, still you would not be justified in finding defendant negligent in not providing such track brake, if you find that the brake upon the car in question was reasonably safe and efficient and such as was in ordinary use." Defendant complains that this instruction permitted the jury to find that the defendant was negligent in not having a track brake, provided the jury found the chain brake was not reasonably safe and efficient; that the company was not bound to supply the car with the most effective brakes or to use the utmost care in keeping them in repair, but to use ordinary care in the selection of brakes and in keeping the same in order. Taking the instruction as a whole, and considering it in connection with the facts in the case, we can see no prejudice to defendant in its being given. The portion criticized amounts to saying that the real question for the jury to determine was whether the brakes upon the car were reasonably safe and efficient and such as were in ordinary use, and to negative or disparage the contention that it was its duty to have had a track brake on the car. We think the true rule to apply, in these days when heavier and more massive cars are used and greater speed is maintained than formerly, is that, while a street railway is only required to use ordinary care in the selection of its brakes and in maintaining and keeping them in repair, yet, in the exercise of ordinary care, it has a duty to use the best brakes and appliances in common use, and to use great care in keeping its appliances for stopping cars in good condition. *Mock v. Los Angeles Traction Co.*, 139 Cal. 616.

Upon the claim that there is no evidence of actionable negligence on the part of the motorman, and that the court should have directed a verdict for the defendant, it may be said that, as a general principle, a street car company is not liable for accidents as a result of horses becoming frightened by the usual operation of its business, provided that its employees are not guilty of any negligence. If

through the operation of the street car after the frightened condition of the animal has become known, or should have become known, to the motorman if he is in the exercise of ordinary care, damage results, the proper test is whether those in charge of the car acted in the manner that persons of ordinary prudence would have acted in like circumstances. It is not the injury that creates the liability, but the fact that the street car company through its agents or servants has been guilty of some negligent act or omission to act, but for which the injury would not have occurred. Under this principle, if the motorman in charge of the train saw, or should have seen by the exercise of ordinary care, that the pony was frightened and apparently unmanageable, and that there was a liability, in view of all the circumstances, that the cart might be backed or dragged upon the street car track, and if a man of ordinary prudence and carefulness would have stopped the car before the accident happened, then the failure to do so would be such an act of negligence as would render the defendant liable. Unless there is no evidence as to negligence, the question is for the jury, and there is sufficient in this case to justify the refusal to direct as prayed. *Gibbons v. Wilkes-Barre & S. Street R. Co.*, 155 Pa. St. 279; see, also cases cited in note on p. 646, vol. 2, Street R. Reports; *Marion Street R. Co. v. Carr*, 10 Ind. App. 200; *South Covington & C. Street R. Co. v. Cleveland*, 100 S. W. (Ky.) 283.

Strenuous complaint is made of a phrase in one of the instructions that it was the duty of the motorman "to employ all means at hand to avoid the collision." It may be said, however, that this phrase does not stand alone, but is qualified and modified by the direct statement, not only in the same instruction, but repeated in a number of others, that the test of the motorman's duty was the exercise of ordinary care. Moreover, the motorman said that he "used all the appliances he had to make the stop" as soon as he saw the pony backing. It may further be said this very language has been approved by other courts. *Gradyszewski v. Detroit U. R. Co.*, 173 Mich. 13; *Bectenwald v.*

*Metropolitan Street R. Co.,* 121 Mo. App. 595; *Morgan v. Wabash R. Co.,* 159 Mo. 262, 60 S. W. 195; *Kaiser v. United R. Co. of St. Louis,* 155 Mo. App. 428, 135 S. W. 90; *El Paso R. Co. v. Kelly,* 109 S. W. (Tex. Civ. App.) 415; *Birmingham R., L. & P. Co. v. Morris,* 163 Ala. 190, 50 So. 198; *Birmingham R., L. & P. Co. v. Brantley,* 141 Ala. 614; *Fisher v. Waupaca E. L. & R. Co.,* 141 Wis. 515.

In conclusion, the thought that runs throughout defendant's argument seems to be that, in operating a motor car and heavy trailer on public streets, it is not bound to use the same degree of care with respect to equipment with safety appliances as is usual in the operation of passenger cars. This is not said in so many words, but it appears to be the basic idea. We cannot take this view. There is as much reason and necessity when heavy work trains are propelled through the streets of a city that the same be furnished with safety appliances as for supplying passenger cars with the same devices, and the greater the momentum of the moving mass, the more necessity there is for increased care and caution. The evidence shows that the motor car, if it had not been drawing a car loaded with four tons of cinders, and had the momentum of the heavy trailer to withstand, could have been stopped in a much shorter distance than it was. The motorman testified that "55 or 60 feet would be an extra good stop" of this train. There is testimony to the effect that an ordinary car traveling at the rate the motorman testifies this train was moving could have been stopped in less than half this distance. Whatever the standard of ordinary care may be that is required for the stoppage of passenger vehicles within a limited distance, the same degree of care is necessary in operating work or construction trains upon the streets.

Taking the record as a whole, we think the district court carefully guarded the rights of defendant, and that no prejudicial error has been shown.

The judgment of the district court is therefore

AFFIRMED.

ROSE, FAWCETT and SEDGWICK, JJ., not sitting.