VILLAGE OF WALWORTH, Respondent, vs. CHICAGO, HARVARD & GENEVA LAKE RAILWAY COMPANY, Appellant.

*April 8—June 21, 1926.*

*Street railways: Shifting track in street: Not relocation: Liability of company to pave track zone: Regulation by municipality: Extent of liability of company: Reasonable value of work: Stipulations: As to liability for payment only: Reasonableness of ordinance.*

1. The shifting of a street railway track to the center of a village street is not a relocation of the railroad, nor is making the grade conform to that of the street a change of grade, within sec. 195.19, Stats., so as to confer jurisdiction on the railroad commission, such statute applying only where railroads and streets cross each other.  p. 383.
2. The fact that the company, performing the functions of a street railway in the village, was incorporated under secs. 190.01 to 190.34, Stats., does not exempt it from paying for the paving of the railway zone, the application of sec. 193.01 not being dependent upon the statute under which the company was incorporated.  p. 383.
3. The requirement of sec. 193.01, Stats., that "every such road shall be constructed upon the most approved plan" merely declares the common law, and a street railway company must construct and maintain its roads and all the conveniences thereof by the use of the common and approved means, and so as at least to be no obstruction to the use of the street by, or to the necessary convenience of, the traveling public.  p. 384.
4. A municipality has the inherent power, not dependent on charter or statute, to require a street railway company to keep its track zone in proper repair, so that the public may safely travel over it; and the railway company must comply with

all reasonable municipal regulations as to the paving, repaving, and proper repair of streets within such zone. p. 384.

5. The duty of a street railway company to keep its track zone in repair is broad enough to require paving and repaving with the same material of which the street is composed. p. 385.

6. Under the police power, as well as under sec. 193.01, Stats., the village, by ordinance, may make such reasonable regulations as may be necessary to protect the public and to secure to the public its right to use the railway zone for travel without danger. p. 385.

7. The obligation of the street railway company to pay to the village the cost of paving the railway zone is measured by the reasonable value of the work done, not by the amount paid by the village; but the railway company is not concerned with the question of compliance with the statute in letting the contract. p. 386.

8. The railway company, stipulating for the construction of a concrete sub-base for street pavement within the railway zone, and reserving no question as to the kind of base to be used, cannot question the reasonableness of the ordinance requiring such base. p. 386.

9. A requirement of the ordinance that the railway zone be paved with concrete like the rest of the street is not inherently arbitrary or unreasonable, in view of evidence that paving with gravel would not be a proper repair, and that concrete, brick, or other stable material must be used to make the zone suitable for public travel. p. 386.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action to recover the cost of paving the railway zone of defendant on a street of the plaintiff village. The facts were not in dispute and the court found them as follows:

"(1) That the defendant operates cars propelled by electricity carrying freight and passengers along North Main street in the plaintiff village; that said North Main street is the principal business street of the village and is one of the main thoroughfares through said village over which heavy traffic passes, especially during the summer season.

"(2) That said North Main street was never permanently paved or improved; that prior to 1922 the said street became very badly out of repair so that it was rough and had many holes in it; that the street railway zone had become so badly out of repair as to be hardly passable for vehicles

desiring to cross the same; that the railway zone could not be used by loaded vehicles; that in places ties of the railroad were exposed so that vehicles attempting to cross the railway zone would bump from tie to tie in their passage.

"(3) That in 1922 the plaintiff determined to pave North Main street with concrete and let a contract for such paving outside the railway zone; that the village requested the defendant to pave the railway zone with concrete, which it refused to do; that on April 2, 1923, the village trustees passed ordinance 44 requiring the defendant company to pave its railway zone in North Main street; that the company refused to comply with such ordinance; that on May 31, 1923, the parties to this action entered into a stipulation whereby they agreed that the railway zone should be paved with concrete with a concrete base under the ties; that said stipulation provided that it should in no wise be 'a waiver of the claim of either party with respect to the obligation of either party to pay for such paving.'

"(4) That pursuant to said stipulation the plaintiff village employed a contractor to pave the railway zone on North Main street with concrete with a concrete base as provided in said stipulation.

"(5) That plaintiff paid the contractor for the paving of said railway zone; that the reasonable value of the work done in paving such railway zone was as follows: Excavating, $862.50; concrete base, $4,550; paving railway zone, $3,760; felt, $342. Total, $9,514.50.

"(6) That the proper maintenance and repair of the railway zone in North Main street required that it be paved with concrete or material other than gravel or crushed stone; that railway zones paved with gravel or crushed stone are hammered at the edge of the concrete by traffic; that as a result of such traffic the gravel is loosened and thrown out upon the paving; that as a result the railway zone is soon out of repair and not suited for public travel; that a gravel or crushed-stone pavement would not have been suitable in the railway zone for the purpose of public travel over North Main street paved with concrete."

As conclusions of law the court found that plaintiff was entitled to judgment, and from a judgment entered accordingly the defendant appealed.

For the appellant there was a brief by *Sanborn, Blake & Aberg* of Madison, attorneys, and *McKinley & Price* of Chicago, of counsel, and oral argument by *John B. Sanborn* and *Paul E. Price.*

For the respondent there was a brief by *Gilbert, Ela, Heilman & Raeder* of Madison, and oral argument by *Roman Heilman.*

The following opinion was filed May 11, 1926:

VINJE, C. J.    The defendant assigns as errors:

"(1) That the court erred in not holding that the work in question involved a relocation of the tracks of the defendant under sec. 195.19.

"(2) The court erred in holding that the plaintiff was entitled to recover from the defendant the cost of paving the railway zone in the street because:

"(a) The defendant is incorporated under ch. 190, Wisconsin Statutes; so that under sec. 190.22 the only obligation imposed upon the defendant was to restore the street to its former state and to maintain the same in such condition.

"(b) The ordinances passed by the town and village of *Walworth* prior to the building of the tracks of the defendant contain no provision requiring the repair or repaving of the street.

"(c) The ordinance passed by the village board of the plaintiff requiring the defendant to repave the street operated to impair the obligation of the contract under the above ordinances.

"(d) The contracts under which the amounts included in the judgment were paid by the plaintiff were void because not let in accordance with the statutes of Wisconsin.

"(3) The court erred in finding that the plaintiff was entitled to recover the amount paid by the plaintiff for the construction of the concrete base under the ties because:

"(a) The court erred in finding that the parties entered into a stipulation whereby they agreed that the railway zone should be paved with concrete with a concrete base under the ties.

"(b) The court erred in finding that the plaintiff employed a contractor to pave the railway zone with a concrete base.

"(c) The court erred in finding that a gravel or crushed-stone pavement would not have been suitable in the railway zone.

"(d) The court erred in not finding that a base of gravel or crushed stone under the ties would have been equally suitable and proper.

"(4) The court erred in finding that the reasonable value of the work done in paving the railway zone was the sum of $9,514.50."

The trial court's opinion so fully, clearly, and correctly states the law of the case that we cannot do better than adopt it as our own. It is as follows:

"Sec. 195.19 of the Statutes does not confer jurisdiction upon the railroad commission to determine the questions here presented. The shifting of the track to the center of the street is not a relocation of a railroad within the meaning of the railroad commission statutes. The making the grade of the track conform to the grade of the street is not the change of grade referred to in the statutes cited by defendant. Sec. 195.19 of the Statutes applies only where railroads and streets cross each other. The language used repeatedly discloses the legislative intent to make this statute apply only to those locations where streets and railroads intersect and cross each other. It would be contrary to the clearly expressed legislative intent to apply this crossing statute to a railroad that does not cross the street at all but which runs lengthwise along the center of the street.

"Defendant contends that it is not required by either the ordinance of August 10, 1897, or by the statutes of the state to pay for the paving of the railway zone, because it is incorporated under ch. 190 of the Statutes. It would be an extremely technical construction of sec. 193.01 of the Statutes which would make its application depend upon

the statute under which a corporation was incorporated.
The defendant is in fact performing the service for the
public which is performed by street cars in the cities and
villages of Wisconsin.   By its express terms sec. 193.01
of the Statutes applies to 'every such road,' 'under what-
ever law formed,' which performs the functions of a street
railway.

" 'Every such road' is 'subject to such reasonable rules
and regulations . . . as the proper municipal authorities
may by ordinance from time to time prescribe.'   The re-
quirement of sec. 193.01 of the Statutes that 'every such
road shall be constructed upon the most approved plan' 'is
merely declaratory of the common law, and there can be no
question but that it is the duty of a street railway company
to construct such roads, and all the conveniences thereof,
and to maintain them, by the use of the common and ap-
proved means, and so as at least to be no obstruction to the
use of the street by, or to the necessary convenience of, the
traveling public thereon. . . . There is a continuing duty
and obligation resting upon the company, in consideration
of its use of the public streets, to consult all the time the
safety and convenience of travelers thereon, consistent with
the full enjoyment of its own privileges and franchises.
The company has no greater right to the use of the streets
than the public, and it being thus a joint use of the street,
neither the company nor the public has any right to make
it dangerous for either in their proper use of it.   *Fitts v.
Cream City R. Co.* 59 Wis. 323, 326, 327, 18 N. W. 186.

"The right of municipalities to require corporations
whose railway tracks are placed in public streets to keep
the track zone in proper repair so that the public may safely
travel over the same is an inherent power not dependent
on the provisions of any charter or statute.   It is obligatory
on the defendant company to comply with all reasonable
regulations of the plaintiff village 'in respect to paving and

repaving of the streets and keeping them in a proper state of repair within the railway zone, without any condition in the charter in that regard. . . .' 'When . . . we search for principles to guide us to a conclusion, we find first of all that it is recognized, with substantial unanimity, that a railway company, whether general or passenger, is bound to keep the portions of streets occupied by its right of way in good condition, even in the absence of any express contract or statutory direction to that effect.' *Madison v. Southern Wis. R. Co.* 156 Wis. 352, 371, 146 N. W. 492. 'It is clear from the rulings of this court that a duty to keep "in proper repair," without qualification, is broad enough to require paving and repaving with "the same material of which the street is composed."' *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 165 Wis. 230, 235, 161 N. W. 745. No question is raised but that the railway zone was so badly out of repair as to seriously interfere with and endanger public travel. Under the police power as well as under the power granted by sec. 193.01 of the Statutes the plaintiff had the power to make such reasonable regulations by ordinance as may be necessary to protect the public and to secure to the public its right to use the railway zone for travel without danger to the public.

"The only questions that remain are whether the ordinance 44 is a reasonable regulation to accomplish such purpose and whether the failure to let the contract for paving the railway zone as required by statute will relieve the defendant from liability to pay for the improvement of the railway zone.

"The action is not one to enforce a tax or a special assessment against the property of the defendant. It is an action to recover the money which the plaintiff has expended to secure the performance of a duty imposed upon the defendant. This work was done pursuant to stipulation of the parties. The sole question at issue is the reasonable

value of the work performed which it was the duty of the defendant to perform. The obligation of the defendant is not measured by the amount paid by the village, but by the reasonable value of the work performed. The defendant is not concerned with the question of whether all provisions of the statute were complied with in the letting of the contract.

"We approach the consideration of the question whether ordinance 44 was a reasonable regulation in the light of defendant's concession made on the oral argument that it is liable to pay such added expense in the paving of the street as was occasioned by the presence of the railway track in the street. This concession applies particularly to the cost of sub-base, which was clearly occasioned by the presence of the tracks in the street. The only issue presented is whether a concrete or a crushed stone or gravel sub-base should have been used. Defendant is not in a position to raise that question, because on May 31, 1923, it stipulated that a concrete sub-base should be constructed. The stipulation reserved no question as to the kind of base that should be used, but only reserved the question of the 'obligation . . . to pay for said paving.' Under this stipulation the only question left open as to sub-base is the reasonable cost of a concrete sub-base.

"The evidence establishes beyond question that the railway zone was in need of repair. The only issue is as to the nature of the repair that should be made in view of the fact that the rest of the street was paved with concrete. The proof establishes the fact that gravel paving in the railway zone would not be a proper repair. The proof establishes the further fact that to make the railway zone suitable for public travel, concrete, brick, stone, or other hard and stable material must be placed on either side of the rails of the track. In the words of the United States supreme court, 'we cannot say that . . . (the) requirement that the railway zone be paved like the rest of the street

. . . was inherently arbitrary or unreasonable.' *Milwaukee E. R. & L. Co. v. State ex rel. Milwaukee,* 252 U. S. 100, 104, 40 Sup. Ct. 306, 64 Lawy. Ed. 476, 480."

*By the Court.*—Judgment affirmed.

STEVENS, J., took no part.

A motion for a rehearing was denied, with $25 costs, on June 21, 1926.