39  413
43  735

AMERICAN BUILDING & LOAN ASSOCIATION v. DWIGHT MORDOCK.

FILED FEBRUARY 20, 1894.    No. 5144.

1. Rulings on Admission of Evidence: REVIEW. The ruling of the trial court, sustaining objections to questions and answers in a deposition offered to be read at the trial, and ex-

cluding the testimony from the jury, examined, and *held* correct, and no error in such action.

2. **Erroneous Admission of Evidence:** INSTRUCTIONS. Where erroneous evidence is admitted by a court, and in the instructions to the jury such evidence is withdrawn by the court · from their consideration, *held*, that such withdrawal by the court cures the error committed in the admission of the evidence.

3. **Instructions.** The refusal of a trial court to give to the jury instructions asked by parties to the case, when instructions already given by the court on its own motion embody, though in different phraseology, the substance of instructions asked, *held*, no error in such refusal.

4. **Review.** Objections to instructions to a trial jury will not be noticed by the supreme court,· unless the attention of the trial court is first called to them by the proper exceptions taken at the time the instructions were given. (*Warrick v. Rounds,* 17 Neb., 412.)

5. **Sufficiency of Evidence:** REVIEW. Questions of fact are to be decided by the trial jury, and a verdict will not be set aside on the ground of a want of sufficient evidence to support it, unless the want is so great as to show that the verdict is manifestly wrong. (*Warrick v. Rounds,* 17 Neb., 412; *Sycamore Marsh Harvester Co. v. Grundrad,* 16 Neb., 529.)

ERROR from the district court of Clay county. Tried below before MORRIS, J.

*J. L. Epperson* and *Charles H. Epperson,* for plaintiff in error.

*Thomas H. Matters, contra.*

HARRISON, J.

The defendant in error (plaintiff in the court below) commenced an action before a justice of the peace in Clay county, Nebraska, and recovered a judgment against plaintiff in error, who appealed the case to the district court, where the plaintiff below filed a petition alleging, first, the corporate character of defendant; second, that about the month of May or June, 1889, one James H. Brooks, agent

for the defendant company, agreed to make plaintiff a loan of $350 on certain property in the town of Fairfield, Clay county, Nebraska, but stated that, in order to procure the loan, it was necessary for plaintiff to become a member of the defendant company; that plaintiff entered into the agreement for a loan and became a member of the company, receiving a certificate of stock for six shares of $100 each; third, that by one of the conditions of the certificate of stock the plaintiff was allowed to return the certificate to the company at any time after one year from its date, and on so doing the company bound itself to repay to him all the several sums of money he had paid to it, with one-fourth the accrued profits upon the stock; that plaintiff was required to pay sixty cents per share on or before the 24th day of each and every month for the period of one year; that plaintiff made all of such payments as required by the contract; that defendant refused to make the loan, and also refused, upon the presentation for cancellation of the stock at the expiration of the year, to pay the amount of money paid it by the defendant, viz., $52.20. The certificate of stock was attached to the petition as an exhibit and made a part of it. The plaintiff prayed judgment in the amount of $52.20 and costs.

Defendant company, for its answer, denied each and every allegation of the petition except those expressly admitted; expressly denied the authority of James H. Brooks to promise plaintiff, for the company, a loan to plaintiff by the company, and pleaded that he was expressly forbidden to promise loans to any one, and that plaintiff knew of the limitation of the authority of Brooks as agent for the company. Defendant admitted that it was a corporation duly organized under the laws of the state of Minnesota; admitted that on June 24, 1889, it issued a certificate to plaintiff for six shares of its stock; admitted that payments of sixty cents per month per share were required to be made until the maturity of the stock or until with-

drawal; admitted the application by plaintiff for a loan and that it was refused or rejected; admitted the application by plaintiff for withdrawal and its refusal.   Defendant further pleaded that plaintiff had made two applications for loans, one August 19, 1889, and one November 2, 1889, and in each application agreed to pay all the necessary expenses incident to the securing of the loans; that defendant procured appraisals of the property offered as security for the loans to be made, at an actual and necessary expense in each instance of $3.50, which sums the company states have never been paid by plaintiff, though often demanded of him; that by the terms and conditions of the certificate of stock, any sums due from plaintiff were to be and were liens on the stock; and further on this branch of the case pleaded chapter 34 of the General Statutes of Minnesota, alleging it to be as follows: "That it is provided by the General Statutes of the state of Minnesota, chapter 34, title 2, section 114, that building and loan associations 'shall at all times have a lien upon the stock or property of its members invested therein, for all the debts due from them to such corporation, which may be enforced by advertisement and sale in the manner provided for selling delinquent stock.'" The defendant further stated that section 5 of article 2 of the by-laws provides as follows: "If any stockholder becomes indebted to the association in any way, such debt shall be a first lien upon the stock of such member, and such stock cannot be transferred or withdrawn until said debt is paid." That by reason of the indebtedness of plaintiff to the company, the company had a lien upon the stock of plaintiff, who was therefore not entitled to withdraw from the association; that plaintiff had not paid dues on the six shares of said stock for the months of July to October, inclusive, in the sum of $14.40, and that for such failure to pay dues, fines had been incurred by plaintiff in the sum of $2.40.   Defendant prayed for the dismissal of the plaintiff's action and for judgment against plaintiff for $23.80 and costs.

Plaintiff replied, denying all new matter set up in the answer of defendant.

On the issues formed there was a trial to a jury, during which the court, by agreement of parties in open court, instructed the jury orally. The jury returned a verdict for plaintiff in the sum of $40.87.

Motion for a new trial was filed, argued, submitted, and overruled. The court then made an order that the plaintiff, within ten days of the date of such order, bring into court and place on file the certificate of stock in controversy, for delivery to defendant and cancellation, plaintiff failing to so do, the verdict to be set aside and a new trial ordered. This order was of date May 28, 1891. On November 19, 1891, the following entry appears: "It satisfactorily appearing to the court that the defendant has deposited in this court for cancellation the shares of stock as by a former order of court he was required to do, and that said order has been fully complied with, it is considered and adjudged that the plaintiff, Dwight Mordock, have and recover of the defendant, the American Building & Loan Association, the sum of $40.87 and his costs herein, taxed at $47.93."

The first error of which the plaintiff in error complains is that the court erred in sustaining the objections to certain questions asked of witness B. F. Stoneman, and excluding the evidence from the jury. The questions and evidence referred to were contained in the deposition of witness Stoneman on pages 3 and 4 thereof. In order to understand the points raised by such assignment of error we will here give the questions and answers:

Q. On receiving applications for loans, what is the usual and customary practice of the association in getting information regarding the property offered by the applicant as security?

A. We apply for the appraisal from three disinterested parties.

31

Q. You may state whether or not it is customary to charge the appraisals so secured to applicants for loans.

A. It is.

Q. You may state whether or not it is customary practice of the association to permit the withdrawal of stock before all liens or charges against such stock are paid.

A. It is not.

Q. State whether under the rules, regulations, and by-laws of the association the expense of appraisals secured on plaintiff's property now are, and at the time of plaintiff's application for withdrawal were, a subsisting lien and charge against the plaintiff's stock.

A. Yes.

The first three of these questions called upon the witness to state what was customary with, or what was the usual customary practice of, the company in transacting the business of the loan department, and more particularly in regard to appraisals of the property offered as security, and the expense incurred in making such appraisals, and in the adjustment with members holding stock, of relations arising from the right of a member to the withdrawal of his stock when liens and charges existed in favor of the company against the stock. These were all governed directly, either by the terms of the contract entered into between the company and plaintiff at the time of the application for a loan, or the rules and by-laws of the association. The rights of the parties to this action could not be determined by "customary practice," but by their contract and the rules and by-laws of the association. We do not discover any prejudicial error in the ruling of the court sustaining the objection to these three questions.

The fourth and last question called upon the witness to give his conclusions of what was contained in the rules and by-laws of the company on the subject embraced in the question, and is open to the objection made for the reason that it was not the best evidence which could be produced.

The rules and by-laws should have been introduced, they being unquestionably the best evidence on the point as to which the witness was interrogated.  The rule of evidence requires the best evidence of the facts to be proved, of which the case by its nature is susceptible, and especially does this apply where the question, as does the one in this case, indicates by its terms that there is better evidence than that sought to be elicited by the question as asked. We are satisfied the trial court was right in its ruling upon the objection to this question.

The court below sustained an objection to the offer of, by defendant as evidence, what is designated or known in the record as "printed literature," and this action on the part of the court is assigned as error.  This "printed literature" is a pamphlet or circular, used mainly, I should judge, as an advertising medium of the association and contains certain of the rules and by-laws of the company and some general information regarding the objects of the company, its plan and business methods.  If competent for any purpose under the issues being tried, it could only be, after proving that the plaintiff had seen it, to establish that he had notice of that portion of it which refers to the expenses of effecting a loan.  This, in exactly the same words, is printed upon the back of the application for a loan which plaintiff signed, which was in evidence and not disputed in any particular.  We cannot see where the defendant was harmed by the ruling of the court which excluded this "printed literature" from the jury.

Another alleged error of which complaint is made is that the court allowed the witness H. N. Jones, overruling the objection of defendant, to testify as follows: " Q. What is the usual and customary price for services of that kind? [Meaning the customary price for appraising property.] A. I never paid anything for having a piece of land appraised for obtaining a loan of money."  This was probably objectionable; but if it was, the court cured any error

there was in admitting the testimony by afterward instruct-
ing the jury to disregard it. We here give the paragraph
of the instruction of the court in which he calls attention
to the evidence of Mr. Jones: "They were entitled, of
course, to such reasonable charges as are usually made for
like services, and I don't go out of my way to say that it
is not what Mr. Jones would pay,—that is not the rule,—
but what such services, if rendered, are reasonably worth in
the community in which this loan is sought, and you must
find that from the testimony." Such instruction effectually
withdrew the evidence of Mr. Jones from the consideration
of the jury and destroyed its effect; and the error, if any,
admitting it was therefore avoided.

The further complaint is made that the court erred in
giving certain portions of the instructions given by it on
its own motion. No exceptions were taken to these in-
structions when given in the court below, according to the
record, and objections to them will not now be considered
here.

The defendant company assigns as error the refusal of
the court below to give instructions numbered one, two,
three, four, five, six, seven, eight, nine, and ten, as requested
by it. We have made a careful and thorough examination
of these instructions in connection with the instructions to
the jury by the court on its own motion, and in any and all
particulars in which the propositions embodied in the in-
structions refused were applicable to the issues and evidence
in the case,—and in the main they were entirely applicable
and pertinent,—they were substantially embodied in the in-
structions given to the jury by the court on its own mo-
tion, the only difference being in language, phraseology,
and arrangement employed in delivering them. This
brings this objection within the well known rule of this
court "that it is not error in the court to refuse to give in-
structions when the same have in substance been already
given." We conclude the court did not err in refusing to
give the instructions.

The court below ordered the plaintiff to file with the clerk the certificate of stock within ten days, that the same might be canceled and delivered to defendant,—if the order not complied with, a new trial to be granted. This is complained of as error. We think it was clearly within the province of the court to make the order. It was undoubtedly a movement to assist in meting out justice and right between the parties, and we fail to see how it in any manner prejudiced the defendant company. If it was entitled to the surrender of the certificate, it was of as much effect and value at this time as earlier in the suit, or even prior to its commencement; and furthermore, the proof shows that when plaintiff requested to be allowed to withdraw, the certificate was deposited where the association could receive it at any time on payment of the amount due plaintiff on withdrawal, and that of this the company was informed at the time. The court had a right to make the order and its so doing was not error.

The only assignment of error which we have not noticed is that the verdict is not sustained by the evidence. We have read, examined, and carefully considered all the testimony produced on the trial of this case as contained in the bill of exceptions, and while we do not think that it was altogether satisfactory and convincing, and men might honestly differ in conclusions reached from hearing it and deliberating upon it, yet we do not feel warranted in saying that there was such a lack of evidence to sustain the verdict arrived at and returned by the jury that the verdict was clearly or manifestly wrong, and hence we will not disturb it.

The instructions given by the court below fairly submitted the issues between the parties to the jury, and there was sufficient evidence to sustain the verdict. The defendant had a fair trial and determination of its case. The judgment of the court below is

AFFIRMED.