MARTIN J. GALLAGHER, APPELLANT, V. BEN LAW ET AL., APPELLEES.

281 N. W. 806

FILED OCTOBER 21, 1938. No. 30400.

*Brown, Fitch & West,* for appellant.

*Wear, Boland & Nye, contra.*

Heard before ROSE, C. J., EBERLY, PAINE, CARTER and MESSMORE, JJ.

EBERLY, J.

This is an action at law for personal injuries sustained by plaintiff Gallagher, which are alleged to have been inflicted by R. D. Piatt, who was at the time employed by Ben Law. Plaintiff was at this time in the employment of the American Radiator Company, a corporation, which, in company with the Aetna Life Insurance Company, its compensation insurance carrier, were made parties to the action as provided by the terms of the Nebraska workmen's compensation law. Defendants Law and Piatt, by their amended answer, in addition to a general denial and a plea of contributory negligence on part of the plaintiff, specifically alleged, in substance, in reference to the accident, that defendant Piatt "had picked up a steel loading plate, or running board, and set the same on edge, and that the said

plaintiff was familiar with the nature, size and weight of said plate, and had placed his hands thereon for the purpose of holding said plate until the defendant Piatt changed the position of his truck in a doorway of said building," and that the plaintiff "negligently and carelessly permitted said plate to drop and come in contact with his leg," and inflict the injuries for which recovery is sought, and that defendant Piatt "had no part whatever in the dropping of said plate, but the same was negligently and carelessly dropped by the plaintiff himself." A trial of the issues thus formed to a jury resulted in a finding and judgment for the defendants. From the order of the trial court overruling his motion for a new trial, plaintiff appeals.

The record establishes the following facts, viz.: The American Radiator Company occupies a four-story building at 417 South Tenth street in Omaha, Nebraska. This is on the east side of the street between Howard and Harney streets. An alley runs along the north side of the shipping room of this building. The distance between the floor of this room and the surface of the alley is approximately 3½ to 4 feet. In November, 1935, plaintiff was making up radiators and shipping them out. The radiators were trucked by hand onto the elevator, brought to the main floor, and placed on the shipping floor. Automobile trucks backed up to the loading door leading to the alley. A metal "running board," an iron plate 4.7 feet long, 3 feet wide, weighing 150 pounds, was then laid from the floor of the trucks to the shipping room floor, over which the radiators were trucked and deposited in the conveyances employed. The loading doors are 9 feet wide. On November 29, 1935, plaintiff found Piatt's truck backed "catercorner" to the loading door and the "running board" in place lying with one end on the truck and the other end on the shipping room floor.

Plaintiff's evidence is: "Well, we walked over to the truck then, and I told him to square up his truck. * * * Q. Well, when you told him to square up his truck, about where were you standing there? A. I was standing in the

doorway, right on the edge of the sill. Q. And which way from this board or pan were you standing? A. West. * * * Q. And which way was he facing? A. Well, he was walking in then, until he turned around when I told him to get it in flush and I would truck them right down the center for him, and he said, 'All right.' He started raising the pan; when he started raising the pan, I says, 'I'll go get the elevator,' and I started walking away and he had the pan about waist-high; that is— * * * Q. Now, what happened? A. Well, I started for the elevator; I walked a little south and started east and all I know is 'bam!' and I was hit. Q. About how many steps had you taken from where you were standing here (indicating) until you were hit? A. Oh, I would say five to seven. * * * Q. Well, when this board or pan hit you, what happened to you? A. It knocked me down."

As to this same transaction, defendant Piatt's testimony is: "A. We walked over toward the truck. He told me I would have to square the truck up a little bit so that the plate would reach flush on both ends of the truck and the doorway. Q. Well, what did you say? A. I said, 'All right, I'll move it.' Q. And, then, what did you do? A. Well, I walked on the truck and lifted the end·up that was in the truck and set it on end in the doorway. Q. Where was Mr. Gallagher then? A. He was standing right there. Q. When you say, 'right there,' what do you mean? A. In the doorway. Q. And when you lifted up the plate, where was Mr. Gallagher? A. Oh, approximately two feet inside the doorway. Q. All right, and what, if anything, did he do with reference to the plate when you picked it up? A. Well, nothing, when I picked it up. He put his hands on it after I had it standing on edge. Q. You set it up on end, did you? A. Yes, approximately like it is now (indicating exhibit 1). Q. Now, which hand did he put on the plate? A. He had both hands on it when I seen him. Q. Now, when the plate was standing in that position, with Gallagher with both hands on it in the doorway, what did you do? A. Well, I jumped down out of the doorway into the alley and started

along the right side of my truck to the cab to move it. Q. And when you did that, did you hear any movement of any kind in the building? A. No, sir. I was about—oh, five feet up alongside the body of the truck when I heard him holler, 'Help.' * * * Q. Then what did you do? A. Well, after I heard him holler, 'Help,' I went back up in the doorway and I seen him laying on the floor. Q. When was the last time that you saw the plate and before you heard Gallagher holler, 'Help'? A. Well, as I—the last I saw it, he had his hands on it as I turned to jump down out of the doorway. Q. And, then, when was the next time you saw it? A. Well, when I—after I had heard him holler, 'Help,' and I had went back inside. Q. Where was Mr. Gallagher at that time? A. Oh, he was laying approximately ten feet from the door. Q. And how was he lying? A. Oh, he was lying on his left side. Q. Did you see the plate drop on Mr. Gallagher? A. I did not. * * * Q. Now, can you tell us where the plate was and how it was lying? A. Well, the plate was lying—the north end of the plate approximately two foot from the doorway and the other was about—oh, six foot."

On rebuttal, plaintiff testified: "Q. Mr. Piatt has testified that when he up-ended it, you put both hands on the board. State whether or not you ever did? A. I never touched the board that morning, at all. If I had took hold, I wouldn't have taken hold of it like that."

As stated in their brief, appellees contend: "Under the testimony of plaintiff himself in this case, he was necessarily at least six feet from the south end of the plate after it had fallen to the floor. His testimony was that he took 'from 5 to 7 steps of ordinary length' in a southeasterly direction from a position directly on the sill and a foot or two west of the plate. This placed him inside the building—a distance of from 12 to 21 feet. The plate was 4.7 feet long and 3 feet wide. One end rested on the truck and one end was in the warehouse. The south end of the plate was about 1 foot inside the door of the warehouse. It was raised up to a vertical position and fell inward to the south. There is no evidence in the record that the plate

slipped at the time it was raised to a vertical position. Therefore, in falling, the plate did not extend more than 5.7 feet south from the door sill.

"These figures are based upon the undisputed evidence in the record. In addition to the physical impossibility of the plate having struck Gallagher at the place where he says he was when it fell, attention is called to the further fact that the plate struck the inside of his left ankle at a time when he was walking in a southeasterly direction from it— a position which would place the plate on his left side and slightly to the rear.

"We submit, accordingly, that the jury in this case was entirely correct in refusing to accept Gallagher's testimony as to how the accident happened. And we submit further that it is physically impossible for him to have been injured in the manner in which he claims the accident occurred."

From the entire record, without determining this contention urged by the appellees, it is quite obvious that the jury accepted as true the version of the affair as given by defendant Piatt, and on this point rejected the testimony of plaintiff Gallagher. On this question of conflicting evidence, the verdict of the jury is controlling.

The appellant contends that in instruction No. 6 the trial court ignored the rule of comparative negligence. However, in instruction No. 7, the rule of comparative negligence is fully stated by the court.

Further, appellant charges that in instruction No. 7 the trial court used the following language, "If upon such comparison you find the plaintiff's negligence slight and defendant's negligence gross, as those terms are defined in these instructions," and that while instruction No. 10 given by the court defines "ordinary care" and "negligence," the term "slight negligence" is not defined in any of the instructions given. This contention, we deem fully answered by the case of *Monasmith v. Cosden Oil Co.*, 124 Neb. 327, 246 N. W. 623, wherein we announced the principle, viz.: "It is not error for the trial court to refuse to define the words 'gross' and 'slight' in an instruction, since they are

words of common use, readily understood by people of ordinary intelligence."

The last contention of appellant is that the trial court erred in submitting certain issues made by the pleadings that were established by the evidence without question, and in fact conceded. These instructions are not to be commended. However, considering the record, including the instructions, as an entirety, it is quite obvious that the substantial rights of appellant have not been adversely affected thereby. Even if it be deemed that technical error was committed, clearly it was error without prejudice, within the scope of section 20-853, Comp. St. 1929.

It follows that the judgment of the district court is, in all respects, correct, and it is

AFFIRMED.