MABEL C. HERMAN, APPELLEE, V. JOHN FIRESTINE, APPELLANT.

21 N. W. 2d 444

FILED JANUARY 25, 1946. No. 31994.

*Richard O. Johnson* and *Perry, Van Pelt & Marti,* for appellant.

*Chambers, Holland & Locke,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

In an action for damages arising out of a collision between an automobile and a transport, a judgment was entered upon the verdict in the sum of $3,242.24. Motion for new trial being overruled, the defendant appealed to this court.

Among the errors relied upon for reversal, it is charged that the court erred in not sustaining the defendant's motion to dismiss the petition when the plaintiff had rested, and in overruling a similar motion at the conclusion of all

the testimony. It is charged that the verdict was contrary to law, not sustained by the evidence, and is contrary to the instructions given by the court. Reliance is placed by the defendant upon alleged error in the giving of each of the 19 instructions making up the court's charge to the jury, and also in the refusal to give ten instructions offered by the defendant.

The facts surrounding the collision may be briefly stated as follows: The plaintiff, Mrs. Mabel C. Herman, residing at Fremont, Nebraska, has operated the Herman Oil Transport Company of that city since her husband's death in 1936, and was the owner of a 1940 D-40 International tractor, pulling a 1940 Fruehauf trailer, the tractor being worth $1,438, and the trailer $2,179.48, for the destruction of which plaintiff prays judgment.

The trailer was carrying over 4,000 gallons of kerosene, and was driven by George Blazer, who had been driving for the plaintiff for about six months. He was driving south on Tenth Street in Lincoln on Sunday morning, April 2, 1944, about 9:30, following the defendant, John Firestine, who was driving a 1938 Plymouth coach, for the destruction of which defendant in his cross-petition prays judgment for $750.

The defendant's wife was sitting in the front seat with her husband, and he was driving at about 15 to 20 miles an hour, going to visit their daughter, whose husband was in the army. The daughter lived at 2441 South Tenth Street, which was located on the west side of Tenth Street. The defendant testified that there were no cars approaching him from the south, and when he got about opposite his daughter's home he turned slightly to the left in order to turn back to the right and go in the driveway at his daughter's residence. When he turned to the left a distance of about five feet, bringing him near to the center of the street, as testified to by Mrs. Frances Murphy, the driver of the tractor-trailer, following closely behind, attempted to go past him on the right-hand side, very close to the curb. At that moment the defendant, turning sharply to his right to

go into the driveway, drove into the side of the trailer, and a collision occurred.

The map, exhibit No. 1, shows that the dual wheels on the right rear of the trailer went up over the curb exactly at the north side of the driveway at 2441 South Tenth Street, and ran in the parking straight ahead at an angle to the street for 67.6 feet, and when it came to rest the Plymouth coach was jammed under the left side of, and about half way back in, the trailer. The door on the right-hand side of the Plymouth coach had been thrown open, and Mrs. Firestine was thrown out and was under the trailer.

Gail Curtin, who lives in the next house north of defendant's daughter's house, testified that he was the first person to reach the scene. He said that when he arrived Mrs. Firestine was getting out from under the trailer and Mr. Firestine was getting out of his Plymouth on the left-hand side. Curtin said he yelled to the driver of the transport to turn off his motor, and at about the same time Mr. Firestine got back into his Plymouth and shut off its motor, but in spite of these precautions the kerosene took fire within two or three minutes of the collision and burned for over an hour, with a fire so hot that people could not approach anywhere near the wreck. Both the Plymouth and the transport were entirely worthless after the fire.

From this brief statement it will be seen that no personal injury to anyone is involved in this action. Additional facts, for the better understanding of what occurred, might include the statement that Tenth Street carries a heavy traffic; that it is 42 feet wide between the curbs, but is not a four-lane road; that the curbing is 21.15 feet out from the sidewalk line; that the place where the right dual wheels of the transport stopped is some 15 feet north of where the north curb of Lake Street would be if it extended across Tenth Street. Lake Street is only 25 feet wide between the curbs, and comes into Tenth Street from the east, but ends in Tenth Street. There was a 50-foot lot, with another house located upon it, south of the driveway defendant intended to turn into, and the next 50-foot lot to the south,

through which Lake Street would go if it was extended, was a vacant lot.

Defendant charges that the refusal of the court to give defendant's requested instruction No. 4 was reversible error. By this instruction No. 4, the court was asked to tell the jury that the attempt of the driver of the transport to pass to the right of defendant's automobile when it had made a turn to the left was prima facie negligence on the part of plaintiff's driver.

The traffic ordinances of the city of Lincoln provide that large or heavily loaded vehicles shall be driven as near the right curb as possible, and shall pass another vehicle proceeding in the same direction on its left side, but "Nothing in this section shall be construed to prohibit a driver overtaking and passing upon the right of another vehicle which is making or about to make a left turn."

The court properly instructed the jury in instruction No. 7 that violation of traffic rules is not, in itself, negligence, but is evidence of negligence, which may be considered with all the other facts and circumstances to determine whether or not either of the parties was, in fact, negligent.

"The violation of an ordinance or statute requiring automobiles and other vehicles to drive to the right of the center of the highway does not constitute negligence *per se*, or as a matter of law; but whether or not such violation constituted negligence is a question for the jury under proper instructions." Burkamp v. Roberts Sanitary Dairy, 117 Neb. 60, 219 N. W. 805.

Considerable stress is laid by appellant on the fact that section 39-7,113, R. S. 1943, provides that when such a tractor and trailer and load weighs over 12,000 pounds it must be equipped with power or auxiliary brake equipment. The court, in its instruction No. 10, set out the substance of this law, and then said to the jury: "You are therefore instructed that if the violation of said law directly contributed to the collision and fire in the instant case, then it will be your duty to return a verdict in favor of the defendant and against the plaintiff, provided his negligence was more

than slight." We believe this properly covered the situation in regard to the absence of auxiliary brakes.

"We are not unmindful of the rule that a violation of a statute or ordinance enacted in the interest of public safety is evidence of negligence * * * , but the rule cannot be made applicable unless there is some causal relation between the violation and an accident." Crandall v. Ladd, 142 Neb. 736, 7 N. W. 2d 642.

We have carefully examined all of the instructions tendered by the defendant, as well as each of the nineteen given by the court, and in our opinion the court gave the jury instructions which covered adequately each and every point of law to which the defendant was entitled in the instructions offered.

"Instructions are to be considered together, to the end that they may be properly understood, and, when so construed, if as a whole they fairly state the law applicable to the evidence, error cannot be predicated on the giving of the same." Gallagher v. Law, 135 Neb. 381, 281 N. W. 806.

The defendant charges that the negligence of the plaintiff's driver was more than slight in the following particulars: That he drove his truck too closely behind defendant's car, and ignored defendant's warning signal; that he failed to have his truck under reasonable control, so he was unable to stop without colliding with defendant's car, and neglected to sound any horn or to slacken his speed; and that he attempted to overtake and pass defendant's automobile on the right side of a street which was not marked nor designated as a four-lane highway. Defendant therefore contends that he was entitled to a directed verdict.

The plaintiff, on the other hand, charges that the defendant was guilty of negligence, in that he operated his said automobile so as to change its course in said street without first ascertaining that such movement could be made in safety and without collision with other vehicles; that he failed and neglected to signal his intention to turn his vehicle either to the right or to the left; that he drove his said automobile into and upon the trailer of the plaintiff without

reasonable cause for so doing; and that defendant failed and neglected to apply his brakes after turning to the right when in the exercise of due care he could have observed the plaintiff's vehicle traveling along said street.

The two statements just set out show that there was a sharp conflict in the evidence. It is then necessary to determine the degree of negligence chargeable to each one. This is not a question to be determined by the court, but under the evidence in this case is clearly a jury question. The jury had before them, by the evidence of the witnesses, the two theories as to how the accident happened. It was for the jury to determine, under proper instructions, what their verdict should be in the case. Under the facts in this case, we believe the trial court was right in refusing to direct a verdict.

"Where evidence is in conflict and such that reasonable minds may draw different conclusions therefrom, the questions of negligence and comparative and contributory negligence are for the determination of the jury." Parks v. Metz, 140 Neb. 235, 299 N. W. 643. See, also, Grantham v. Watson Bros. Transportation Co., 142 Neb. 362, 6 N. W. 2d 372; Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315; Burry v. Interstate Transit Lines, 136 Neb. 695, 287 N. W. 66.

"If there be any testimony before the jury by which a finding in favor of the party on whom rests the burden of proof can be upheld, the court is not at liberty to disregard it and direct a verdict against him." Bainter v. Appel, 124 Neb. 40, 245 N. W. 16. See, also, Komma v. Kreifels, 144 Neb. 745, 14 N. W. 2d 591; Brewer v. Fischer, 144 Neb. 712, 14 N. W. 2d 315.

Anderson v. Strack, (Iowa) 17 N. W. 2d 719, is a case very closely in point. The principal difference between the two cases is that the Iowa collision occurred out in the country as the automobile attempted to turn to the right to go into a cemetery and was closely followed by a large furniture van instead of by a transport carrying kerosene, as in the case at bar.

It appears from this decision that the sections of the Iowa

code are very similar to the ordinances of the city of Lincoln set out in our case. The Iowa court held that, whether the truck following was driven at too great a speed, or whether it was following more closely than was reasonable and prudent, were questions for the jury. The Iowa court affirmed the judgment, but required the verdict of $9,210 to be cut by a remittitur to $5,500.

In the case at bar, the evidence was in sharp conflict, but that is to be expected in damage cases. The case, having been well tried, involved questions of fact which required submission to a jury.

The only question left is as to the instructions given by the court, and a careful examination of the charge shows no prejudicial error. Therefore, the judgment of the trial court is affirmed.

AFFIRMED.