HAROLD WRIGHT, BY NEXT FRIEND, LOUIS A. WRIGHT, APPELLEE, v. ROLLAND CAMERON, APPELLANT.

27 N. W. 2d 226

Filed April 25, 1947. No. 32172.

L. R. Doyle and Van Pelt, Marti & O'Gara, for appellant.

Littrell & Patz, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is a law action for damages growing out of an assault and battery. Judgment was entered for $1,000 for the plaintiff on the verdict of the jury for that amount. Defendant appealed.

There is not a great deal of dispute as to the facts in this case. Plaintiff's father filed petition as next friend, alleging: That the minor was 19 years of age and a

resident of Cass County; that the defendant, Rolland Cameron, was also a resident of Cass County; that the defendant made a willful, unlawful, violent, and malicious assault by striking plaintiff in the face, inflicting injuries by breaking his jawbone in two places, which caused a lack of occlusion in his back teeth and an overlapping, or displacement, of his jaw, and the loss of several molar teeth; and that aside from the pain and suffering plaintiff lost his wages at the Cushman Motor Works in Lincoln from July 22, 1945, until August 27, 1945, was confined to the Lincoln General Hospital for six days, and required the services of a dental surgeon for some time thereafter.

On Saturday evening, July 21, 1945, plaintiff had driven to Ashland with his older brother and wife, who were shopping around for an hour or so, and upon returning to Greenwood plaintiff visited at a couple of taverns and a garage or filling station. A man gave him two bottles of beer, and he hid one under a bench on the west side of the D-X filling station, with the intention of taking it with him when he went home. He then went for a ride in Greenwood and out in the country with three other young people, and the four of them drank the other bottle of beer which had been given to plaintiff.

The plaintiff, Harold Wright, and the daughter of the defendant, Norma Jean Cameron, had both attended the Greenwood public school and knew each other, but there is no evidence that they had ever gone together. Harold had been standing on the sidewalk outside of "Heinie's Place," talking through the window with Mrs. Rolland Cameron, who was Norma Jean's mother. Just then Norma Jean and her girl friend, Ferne Comstock, came into the tavern. Plaintiff testified: "Q And from where you stood at the window, could you see them as they entered the door? A Yes. Q Go ahead and tell us what happened after they came in. A They walked over to the booth where Mrs. Cameron and Mrs Mac-

Dougal were sitting, and Norma Jean looked out the window and said, 'What are you doing here talking to two old married women when Ferne and I are in here,' and I told them I was mostly killing time now, and then Ferne and Norma Jean Cameron walked back outside and came around to the west side of the building where I .was. Q · Had you moved from the window? A No sir. Still at the window. Q Did they come where you were at the window? A That is right. Q Then what was done? A ·Well, I was standing there cleaning my finger nails first and then Norma Jean grabbed the finger nail file out of my hand and started cleaning out her finger nails and I got it back and then she asked me if I had any beer. Q What did you say? A I told her no. She said, 'come on give me a drink you old tightwad,' so I told her I had a bottle of beer, but that it was hot and she asked where it was and I told her down at the D-X station, and she still insisted she have a drink and I told her if she wanted a beer .she had to go down to the D-X station and get it, and she said I would have to go with her, for me to show her where it was at, so I did; and I walked—Ferne Comstock was going with us, but she said she didn't want no hot beer, so she didn't go." Norma Jean in her testimony denied that she called him a "tightwad" or that she asked him for beer, but evidence shows he was standing within two feet of Norma Jean's mother while this conversation was taking place, and the mother was not called as a witness.

Norma Jean followed him to this filling station, which is on Highway No. 6, being the main highway from Omaha to Lincoln, on which there is heavy. traffic. This filling station was about 125 feet from the place where Norma Jean had left her mother. Norma Jean testified that he walked ahead and she walked two or three feet behind him. When they got to this filling station he reached under the bench and got his bottle of

beer and gave her one drink and he took a drink, and within a minute or two her father appeared.

It appears that Ferne Comstock had told the defendant where his daughter, Norma Jean, had gone. The father followed them right over and inquired what was going on there. When neither one of them answered him he struck the plaintiff one blow, breaking his lower jaw in two places. The plaintiff then ran. Norma Jean testified that the plaintiff had treated her as a perfect gentleman, that he did not touch her in any way, and they were standing three or four feet apart at the time her father arrived on the scene.

Dr. Frederick W. Webster, a dental surgeon of many years' practice in Lincoln, testified that the plaintiff was brought to his office the next morning by his father, with his lower jaw fractured in two places, unable to talk, and in distress, with very intense swelling on the left side of his face. He wired the jaw together temporarily and put on a head bandage and sent him to the hospital for surgical treatment. His office charts and clinical records, showing the charges made, were refused admission in evidence.

With this summary of the facts, we will now examine the defense as set out in the answer in paragraphs 3 and 4:

"3. Alleges that on the 21st day of July, 1945, Harold Wright attempted to contribute to the delinquency of the defendant's minor child, and to debauch her by providing her with liquids containing alcohol and of an intoxicating nature; that the defendant, in protecting his said daughter from the attempted debauchery, used force only to prevent the said Harold Wright from continuing with his attempt to contribute to the delinquency of defendant's minor child and to her debauchery; that if the said Harold Wright was injured as alleged, it was while the said defendant was protecting his said daughter as above set forth, and that the said.

defendant used only such force as was necessary in the protection of his said child.

"4. Alleges that the defendant did not intend to injure said Harold Wright, and that if the said Harold Wright suffered any injuries they were caused by and resulted from said Harold Wright's attempt to harm defendant's minor daughter as above set forth."

The defendant testified that he was 42 years of age; that he has a family of two sons and one daughter, Norma Jean; and that he does a general trucking business, hauling cream, grain, and other things. He said he had known the plaintiff for several years. He testified that about 11 o'clock this Saturday night he inquired of Ferne Comstock where Norma Jean was, and walked across the street and around to the west side of the filling station and found her there talking with a man, "and I pushed this man back and took her by the arm and led her around the corner," but he said that at the time he pushed or shoved him he did not know it was Harold Wright.

On cross-examination he said he gave a sweeping motion, struck him with his entire hand "and told him he better get going." Defendant testified that Heinie's tavern is about 125 feet from the filling station. He also admitted on cross-examination that he did not see any bottle of beer down there, nor hear his daughter make any outcry, or scream, or anything of that kind; that he did not see anybody have hold of his daughter; and that he went around the station with the intention of using the force that was necessary to get her away from whoever was there. He testified that his daughter minds him very well, and he was not in the least concerned about finding out who it was before he hit him. He admitted on cross-examination that he had had two bottles of beer himself during the evening, one bottle in each tavern.

The first assignment of error is in regard to the giving of instruction No. 12. The second assignment of error is

that the court failed to instruct the jury that if they found for the plaintiff they should limit the recovery to such injury sustained or pain suffered for that part of the assault and battery that was excessive. Third, it is charged that the court erred in failing to instruct the jury that if they found the defendant was justified in using all the force he did use to protect his daughter from the debauchery of the plaintiff no recovery could be had by the plaintiff. The defendant also charges as error that the trial court overruled the defendant's motion for a new trial, that the verdict was excessive and was given under influence of passion and prejudice, and that the court failed to instruct the jury on the defendant's theory of the case.

In the reply brief, but not in defendant's original assignments of error, it is charged that instruction No. 8 is an incorrect statement of the law and prejudicial in that it recognized that defense of defendant's daughter under certain circumstances would be a justification for the use of force, but that the instruction was erroneous in saying that the danger must be "actual and apparent." The evidence in this case does not show any justification whatever for the use of force. Accordingly, we are of the opinion that the trial court should not have instructed on the subject of justification. We have examined instruction No. 8 in the light of the circumstances and find that since there was no justification for the giving of any such instruction, it was favorable to defendant rather than prejudicial to him. In re Estate of Keup, 145 Neb. 729, 18 N. W. 2d 63.

We have also examined instruction No. 12, and find that it correctly stated the elements to be considered by the jury in determining the measure of plaintiff's damages, and correctly advised the jury how to arrive at the same.

"A judgment will not be set aside because a more accurate statement of the law might have been made than that contained in the instructions, when from a

consideration of the instructions as a whole no prejudicial error appears." Kocar v. Whelan, 102 Neb. 503, 167 N. W. 775.

"Instructions are to be considered together, to the end that they may be properly understood, and, when so construed, if as a whole they fairly state the law applicable to the issues presented by the pleadings and the evidence in support thereof, error cannot be predicated on the giving of the same." Pruitt v. Lincoln City Lines, 147 Neb. 204, 22 N. W. 2d 651.

If the defendant's wrongful act is the proximate cause of a compensable injury to the plaintiff, then the question whether the defendant could or should have foreseen the result becomes immaterial. The principle established would certainly not be less true where the act complained of is not mere negligence, but a willful tort. That defendant could not foresee nor anticipate plaintiff's injury, therefore, avails him nothing. See Lambert v. Brewster, 97 W. Va. 124, 125 S. E. 244.

Error is assigned that the verdict is excessive. In an examination of the evidence of pain and suffering, continuing over several weeks, because the lower jaw was broken in two places by defendant's blow, and the permanent loss of several molar teeth, and the other facts shown, we have reached the decision that the verdict of the jury was not excessive and this assignment of error has no support.

In another case this court has said: "The remedy by action to recover damages for assaults and batteries, when properly administered, is an efficient factor in the preservation of peace and order. Men of violent disposition, responsible financially, who care little for fines imposed by magistrates under criminal suits, have a wholesome dread of such actions in jurisdictions where they are properly enforced. They should not therefore be lightly regarded, but the right to recover in such cases should be upheld and enforced." Glassey v. Dye, 83 Neb. 615, 119 N. W. 1128.

After an examination of all the assignments of error, we reach the conclusion that there was no prejudicial error in the case, and the judgment is affirmed.

AFFIRMED.