MARION A. DANNER, APPELLEE, v. WILLIAM H. WALTERS, APPELLANT.

48 N. W. 2d 635

Filed June 29, 1951. No. 32937.

*Gross, Welch, Vinardi & Kauffman,* and *Harry A. Hall,* for appellant.

*Wear & Boland, Van Pelt, Marti & O'Gara, Warren K. Dalton,* and *Robert D. McNutt,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by the plaintiff,

Marion A. Danner, against the defendant, William H. Walters, to recover property damage to a truck owned by the plaintiff and driven by his brother Richard Danner, as a result of a collision between the truck and an automobile owned and operated by the defendant. The defendant filed an answer and counterclaim seeking damages for personal injuries sustained by him as a result of the collision, and for his and his wife's medical expenses. The case was tried to a jury which returned a verdict in favor of the plaintiff and assessed the amount of the plaintiff's recovery in the sum of $2,900. Judgment was entered on the verdict. The defendant's motion for a new trial was overruled, and the defendant appeals.

For convenience we will refer to the parties as originally designated in the district court, and will refer to Richard Danner as the truck driver.

The defendant contends the trial court committed reversible error in determining that the evidence, including the physical facts, was sufficient to sustain the verdict and judgment for the plaintiff, and in refusing to grant the defendant a new trial for insufficiency of the evidence to sustain the verdict.

Where a verdict is assailed for the reason that the record discloses that there is not sufficient evidence to support it, in an investigation of that character it becomes the duty of the appellate court to analyze the testimony of the witnesses and the physical facts in connection therewith.

It appears from the record that the plaintiff is engaged in the trucking business and is the owner of a 1946 Diamond T tractor, and trailer of the approximate length of 28 feet. The outside of the trailer part of the unit is 8 feet in width. This truck was in good mechanical condition, equipped with vacuum brakes over hydraulic that work on the ten wheels of the vehicle, six in the front part thereof and four in the back. The weight of the truck empty is 13,000 pounds. The plaintiff's brother Richard Danner, employed by the plain-

tiff, left Pomeroy, Iowa, enroute to Blackwell, Oklahoma, with a load of oats weighing ten tons, at 8 a. m., on April 19, 1949. The day was clear and the pavement dry. Prior to the accident which occurred at approximately 2 p. m., the same day, he was proceeding on U. S. Highway No. 6 to Lincoln. This highway runs north and south along the east side of Gretna where there is a sweeping curve which turns to the right or west through the edge of Gretna. The pavement on the curve slants from the south to the north. The highway at this point is 20 feet in width, and the shoulders on each side thereof are 4 feet wide. On the south side of the curve, 2 or 3 feet from the pavement, is a wire-fence guardrail which runs almost completely around the curve a distance of 600 feet. Before arriving at the scene of the accident the truck driver maintained a speed of 35 miles an hour and was proceeding on his own side of the highway. Down the embankment on the south side of the highway there was a fire burning which, due to the wind blowing toward the north, caused the highway to be covered with dense smoke. The truck driver saw the smoke when he was at a distance of 150 feet from it. He was driving in fourth and low-ratio gear which gives more power and reduces the speed. He took his foot off of the gas and entered into the smoke at a speed of approximately 25 miles an hour. The truck was equipped with a large red light on the back of the trailer. When he proceeded a distance of approximately 5 feet or so into the smoke it thinned out a little and he saw a car which was in the smoke "astraddle of the black center line" of the highway which he could see, at a distance of approximately 20 feet from him. He applied his brakes and the car, which later developed to be the car owned and operated by the defendant, struck the truck a foot or a foot and one-half inside of its left front corner. He testified that half of the defendant's car was over the center line of the pavement. He was unable to see whether or not the defendant turned his

car in either direction. The left front wheel of the truck was 2 feet from the center line of the highway when the defendant's car struck the truck. Defendant's car was proceeding at about 50 miles an hour. The left front wheel of the truck was knocked off. The truck, after being struck, made a 45-degree turn to the south side of the highway, went through the guardrail, and down the embankment into the bottom of the ditch and rested on its side with the wheels tipped up.

A witness, driving her daughter from Omaha to Lincoln to attend the University of Nebraska after the Easter vacation, testified that they followed the truck for a distance of 10 miles. The truck was traveling at a rate of speed of 35 miles an hour, which speed was maintained as was also their speed. The truck was on its own right side of the highway proceeding south. When they proceeded toward the curve they came to an oil station on the west side of the highway, endeavored to pass the truck by increasing their speed, and pulled up along side of it. They then saw a cloud of smoke and the driver, looking into the rear-view mirror to see if anyone was behind them, slowed the car and pulled in behind the truck, and proceeded to follow it. She believed she saw a red light flash as the truck proceeded into the smoke where it disappeared from her view. She was about 30 feet behind the truck at that time. She drove into the smoke and had proceeded a short distance when she saw the rear part of the truck go over the embankment on the south side of the road. She stopped her car and went across the highway to the left or south side. The truck was lying in the bottom of the ditch with the tractor wheels turned toward the highway. The trailer part was turned just the opposite. She estimated that the truck had proceeded possibly 12 feet into the smoke. She was unable to see the truck when she was in the smoke. She was driving blind, and was concerned as to whether or not she was on her own right side of the highway. Her evidence was corrobo-

rated by that of her daughter who was riding with her and seated to her right.

The defendant's evidence is to the effect that he was employed by Crane & Company, a Massachusetts corporation engaged in the manufacture of paper, with his headquarters at Kansas City, Missouri. The State of Nebraska constituted a part of his territory. He had been in Lincoln and called on a customer. He left Lincoln with his wife, who was accompanying him on the trip, to go to Omaha to call on some customers there. They left Lincoln in a 1948 Chevrolet coupe owned and operated by the defendant. After they had proceeded on U. S. Highway No. 6 along side of Gretna and had gotten over the top of a hill and started down a slight grade, defendant noticed smoke which was about a block and a half ahead of him. He estimated the curve started 300 or 400 feet from what is designated as the Lincoln end of the guardrail. The smoke was dense, white in color with a sort of yellow tinge, and looked to him to be very thick. He was proceeding on the right side of the highway intending to negotiate the curve turning to the left to proceed north on U. S. Highway No. 6, thence on to Omaha. He was traveling at a rate of speed of 25 miles an hour when passing the Chrysler-Plymouth garage at Gretna, and continued that speed to within a distance of 35 to 40 feet from the smoke on the highway. He then slowed his car down and remarked to his wife that no one was tending the fire. He shifted the car into second gear and was then proceeding at a rate of speed of 5 or 10 miles an hour. After he approached the smoke and had passed a few wisps of it he pulled as far as he could over to the right side of the highway and was then about 5 to 7 feet away from the dense part of the smoke when he saw the plaintiff's truck. He noticed the guardrail, and estimated the accident happened at a point about 400 feet past the starting of the guardrail to the west. He could see the top of the hood, the bumper, the lights, and the fenders of the truck

which was on defendant's side of the highway and coming toward his car. He could not estimate the speed of the truck, but it loomed up in front of him all at once. The left front part of the truck hit the left front section of his car. This was the extent of the defendant's testimony with reference to the accident.

Defendant's wife testified to substantially the same set of facts with this variation: That there was a crest of a hill when the defendant slowed down his car to enable them to see what they were getting into, and the defendant had pulled over to the right side of the highway as far as he could go. As they were approaching the smoke she saw the lower part of the truck loom up ahead of their car, and the truck was on the defendant's side of the highway. The left side of the truck seemed to be heading straight for the middle or left side of the defendant's car. She estimated they were 5 or 6 feet from the smoke when the truck came out of it. She knew the truck was going to strike their car and the next thing she knew somebody was trying to open the door of their car.

It appears from the record that two days after the accident, on April 21, 1949, the defendant's wife, in a statement taken by a court reporter, stated that when she saw the truck it was over on its own side of the road, and that she could see the truck when they entered the bank of smoke. She stated they "were going 45 miles an hour but I wouldn't even know what the speed was when we were hit, it all happened so fast. In fact, if I had been driving I would have paid more attention."

The defendant gave a statement on the same date in which he stated he was going about 50 miles an hour when he noticed the smoke, and slowed down to 40 miles an hour. He did not see the truck until they collided. He had just entered the smoke at the time the accident happened, and could not have been in the smoke a distance of more than 10 yards.

The defendant and his wife could not remember the

interview in the hospital on April 21st.   Each of them was in a semiconscious condition when the statements were made, and the condition of each was dangerous. They were under the influence of morphine and other opiates.

A witness who was traveling out of Lincoln on the same highway arrived at the scene of the accident shortly thereafter.   He saw the defendant's car, the back end of which was protruding through the guard-rail fence.   It was sitting at a right angle to the pavement with the front of the car 2 or 3 feet on the pavement.   The truck was lying on its side in the ditch, headed west.   This witness testified that he saw a mark which started about 2 feet on the north side of the center line of the highway, 20 to 25 feet in length, or approximately the width of the pavement, which indicated that the pavement had been torn by a sharp object. The direction of these marks was from the north side of the highway at a 45-degree angle to the south side of the highway and proceeded to a large opening in the guardrail fence which was adjacent to the position of the truck which was in the ditch.   This mark continued south across and off of the pavement.   There was also a mark in the dirt on the south shoulder through the hole in the guardrail fence.   The Chevrolet was sitting about 15 feet to the east of the larger hole in the guard-rail fence.   The tire marks on the north side of the pavement were about 10 feet west of the Chevrolet.   There was some broken glass in front of the Chevrolet.

The witness who was riding with her mother in the car that followed the truck testified she heard a loud crash, and when they had gotten out of the smoke the defendant's car was sitting in a perpendicular angle to the black center line of the highway, the guardrail fence had been flattened, and the back wheels of the defendant's car were resting on this fence.   She testified to seeing tire marks on the left or north side of the highway leading toward Omaha.   These tire marks went across

the pavement at a 50-degree angle. She observed some chip marks which started on the north side of the pavement and seemed to run toward the south, the same as the tire marks.

Nebraska Safety Patrol officers who arrived at the scene of the accident about 2:30 p. m. testified to seeing some scratches running in the direction of the Chevrolet car, which started 1 foot 11 inches from the center line on the defendant's side of the pavement and ran back to the Chevrolet a distance of 8 or 10 feet.

A witness who arrived at the scene of the accident to furnish tow-in service testified that he observed a mark about 2 feet from the center line of the highway on the defendant's side thereof, which indicated to him that that was the place where the wheel of the truck was knocked off and the axle of the truck fell. This mark gradually faded out on the highway. He noticed no tire marks in the direction of the defendant's car.

Other evidence has to do with the position and condition of the parties after the accident, the severity of the injuries suffered, the expert medical testimony with reference thereto, the expenses incurred by the defendant in such respect, and the fair and reasonable value of the vehicles before and after the accident.

It is the rule in this jurisdiction that physical facts may not be accepted as a matter of law or as a ground for refusal to submit a case to a jury as against the testimony of witnesses on a controverted fact question, unless they are demonstrable to a degree that reasonable minds cannot disagree concerning their existence, and unless results flowing therefrom are demonstrable to the same degree agreeable to the known and immutable laws of physics, mechanics, or mathematics. See, Jones v. Union P. R. R. Co., 141 Neb. 112, 2 N. W. 2d 624; Riekes v. Schantz, 144 Neb. 150, 12 N. W. 2d 766; Pruitt v. Lincoln City Lines, 147 Neb. 204, 22 N. W. 2d 651; Rueger v. Hawks, 150 Neb. 834, 36 N. W. 2d 236.

The following authority is also pertinent to the instant

case: " 'Where, however, there is a reasonable dispute as to the pertinent physical facts, the conclusions to be drawn therefrom are for the jury, and a verdict based thereon will not be disturbed unless clearly wrong.' " Rueger v. Hawks, *supra.* See, also, Moore v. Krejci, 139 Neb. 562, 297 N. W. 913; Pruitt v. Lincoln City Lines, *supra.*

We conclude the foregoing assignment of error of the defendant cannot be sustained.

The defendant contends the trial court committed reversible error in admitting over objection of the defendant, testimony of a safety patrolman that he made no arrest at the scene of the accident. The safety patrolman testified that a form was filled out in accordance with the information obtained at the scene of the accident and that page 2 of this form or report showed that both vehicle drivers were driving straight ahead. Without objection, he testified there was nothing to indicate a violation on the part of the truck driver. He was asked whether or not he indicated on the report that the truck was doing anything improper in passing the other car. Objection was made and sustained. He was then asked if he made any arrests. This question was objected to and overruled. He answered that he made no arrests.

We believe the admission of the evidence complained of was error, however, it was error without prejudice. Where evidence is objected to which is substantially identical with evidence admitted and not objected to, prejudicial error will not lie. See Olmstead v. City of Red Cloud, 86 Neb. 528, 125 N. W. 1101.

The defendant contends that the trial court committed reversible error in excluding the testimony of a safety patrol officer as to where the point of impact between the two vehicles occurred.

This patrolman arrived at the scene of the accident approximately half an hour after it occurred. He gave evidence as to the tracks or other marks made by the

truck and the defendant's car, what he observed with reference to the same, and other circumstances surrounding the accident which he was in a position to know and testify about. He testified that he investigated about 50 to 100 accidents a year, gathered evidence, and made reports of the accidents to the state. He did not take measurements on all accidents. He was asked, from his experience as a traffic investigator, where the point of impact between the two vehicles occurred, to which there was an objection which was sustained, and an offer to prove that if the witness were permitted to testify he would say that the approximate point of impact was 1 foot 11 inches south and east of the center line of the pavement. The offer to prove was objected to and the objection sustained.

One of the objections most frequently raised against the admission of expert opinion testimony is that the opinion offered invades the province of the jury. This objection is indeed the basis of the general rule of evidence that the testimony of witnesses must be confined to concrete facts perceived by the use of their senses as distinguished from opinions and conclusions deducible from evidentiary facts. In many cases it is asserted as a broad general rule, often assumed to be an inflexible rule of law, that while an expert may be permitted to express his opinion, or even his belief, he cannot give his opinion upon the precise or ultimate fact in issue before the jury, which must be determined by it. See, 20 Am. Jur., Evidence, § 782, p. 653, and cases cited under note 16 thereof; Neal v. Missouri P. Ry. Co., 98 Neb. 460, 153 N. W. 492; Gross v. Omaha & C. B. Street Ry. Co., 96 Neb. 390, 147 N. W. 1121, L. R. A. 1915A 742.

A witness may describe the marks that he has observed near the place of an accident. The inference to be drawn from the testimony regarding such tire marks, skid marks, or scratches is solely the province of the jury. See Thornbury v. Maley, — Iowa —, 45 N. W. 2d 576, and cases cited therein.

The physical facts from which this question was to be answered were all presented to the jury. The issue did not call for the opinion of an expert. The jury was as competent to decide from the facts the point at which the impact took place as was the officer. We find no reversible error in the ruling of the trial court as contended for by the defendant.

The defendant contends the trial court failed to inform the jury on the burden of proof as to whom the verdict should go in the event that the evidence was equally balanced, or in the event that the evidence preponderated in favor of the defendant, relying on Fitzsimons v. Frey, 153 Neb. 124, 43 N. W. 2d 531, and Ficke v. Gibson, 153 Neb. 478, 45 N. W. 2d 436.

In Kristufek v. Rapp, *ante* p. 343, 47 N. W. 2d 923, this court said: "An instruction, which correctly advises the jury that plaintiff must prove all the material elements of his case by a preponderance of the evidence and that if it fails to so establish any one of them the verdict should be for the defendant, is not erroneous in that it fails to inform the jury as to what their verdict should be if the evidence was evenly balanced."

The instruction on the burden of proof complained of in the instant case is very similar to the instruction on the same subject complained of in Kristufek v. Rapp, *supra.* In substance the instruction says that the plaintiff must prove all of the material elements of his case by a preponderance of the evidence, and that if he fails to so establish any one of them by a preponderence of the evidence, the verdict should be for the defendant. It is the plain import of the instruction that if the evidence is evenly balanced the verdict shall be for the defendant. On this assignment of error Kristufek v. Rapp, *supra,* is decisive.

While the defendant complains of other instructions given by the trial court, from an examination of these instructions and considering the instructions as a whole we conclude that the same are sufficient and adequate

to properly inform the jury of the matters complained of by the defendant, and the assignment of error with reference thereto is without merit.

Instructions are to be considered together, to the end that they may be properly understood, and, if as a whole they fairly state the law applicable to the evidence when so construed, error cannot be predicated on the giving thereof. See, Gallagher v. Law, 135 Neb. 381, 281 N. W. 806; Blanchard v. Lawson, 148 Neb. 299, 27 N. W. 2d 217; In re Estate of Wahl, 151 Neb. 812, 39 N. W. 2d 783.

A judgment will not be set aside because a more accurate statement of the law might have been made than that contained in certain instructions, when from a consideration of the instructions as a whole no prejudicial error appears. See, Wright v. Cameron, 148 Neb. 292, 27 N. W. 2d 226; Pauli v. State, 151 Neb. 385, 37 N. W. 2d 717.

The defendant contends that the trial court committed prejudicial error in permitting the plaintiff, over objections, to introduce evidence that the employer of the defendant paid him compensation, also paid his doctor bills, medical bills, and other expenses.

The plaintiff's position is that within the contemplation of section 48-118, R. S. 1943, the defendant-counterclaimant was obligated to make his employer a party for the reason that the employer paid him compensation and also paid his doctor bills, medical bills, and other expenses, therefore the employer must be made a party to the suit for the purpose of reimbursement under the right of subrogation provided for in this section of the statutes. The plaintiff moved to dismiss the first cause of action alleged in the counterclaim principally for the noncompliance with section 48-118, R. S. 1943, which motion was overruled.

The Workmen's Compensation Act recognizes common-law liability of third persons for negligent injury to employees. See Tralle v. Hartman Furniture & Carpet Co., 116 Neb. 418, 217 N. W. 952.

Section 48-118, R. S. 1943, has been held to be for the benefit of the employer, so that he might recover from a third party, who negligently injured his employee, the amount he was required to pay by the compensation statute. See Oliver v. Nelson, 128 Neb. 160, 258 N. W. 69.

The employer of the defendant is not involved in this tort action for damages, and the only right that could accrue, insofar as this case is concerned, to the benefit of the employer would be the right of subrogation for compensation paid by it to its employee as provided for in section 48-118, R. S. 1943.

We are not required, in the state of the record, to pass upon the question as to whether or not the defendant-counterclaimant should have made his employer a party or was required to do so under section 48-118, R. S. 1943. While we believe the admission of the evidence complained of by the defendant was error, it was error without prejudice. The trial court withdrew its consideration from the jury. The trial court, in an instruction on the measure of damages, stated: "If you find for the defendant you will not make any deduction for any amount of wages advanced to the defendant by his employer or any payments made for medical or hospital expense by the latter."

In this connection the following authorities are applicable.

Where erroneous evidence is admitted by a court and in the instructions to the jury such evidence is withdrawn by the court from their consideration, such withdrawal by the court ordinarily cures the error committed in the admission of the evidence. See American Building & Loan Assn. v. Mordock, 39 Neb. 413, 58 N. W. 107.

Where evidence improperly received is afterwards stricken out and expressly withdrawn from the consideration of the jury, the error involved in its reception is ordinarily cured. See, Bush v. James, 152 Neb. 189, 40 N. W. 2d 667; Conley v. Hays, 153 Neb. 733, 45 N. W.

2d 900; Kuhlman v. Farmers Union Co-Operative Assn., 152 Neb. 597, 42 N. W. 2d 182; Nelson v. Jenkins, 42 Neb. 133, 60 N. W. 311.

For the reasons given in this opinion, the judgment entered on the verdict by the trial court is affirmed.

AFFIRMED.